## In re AGNEW.

(District Court, S. D. Mississippi, Jackson Division. November 3, 1909.)

**1. TRUSTS (§ 354*)—FOLLOWING TRUST FUNDS—LOSS OF IDENTITY.**

Where goods were conditionally sold in Mississippi under a contract by which the buyer was to hold the proceeds in trust for the seller until the price was paid, but he commingled the proceeds so that their identity was lost, the seller had no prior right thereto as against the buyer's general creditors under the Mississippi law, providing that, where trust funds are commingled with other funds and assets of the debtor, the trust is lost.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 527, 528; Dec. Dig. § 354.*]

**2. BANKRUPTCY (§ 140*)—RECLAMATION OF GOODS—AGENCY CONTRACT.**

Before goods in the possession of a bankrupt under an alleged agency contract for sale can be recovered by the alleged owner, it must appear that the goods were at all times subject to the owner's control, both as to the selling price and the manner in which the goods should be sold, that there was a strict accounting between the bankrupt and the owner at the periods called for in the agency contract, giving the names of purchasers to whom goods had been sold, the amount obtained for them, the amount sold, information as to whether the sale was for cash, or otherwise, and, if for notes or accounts, that the notes and accounts had been either forwarded to the owner or accounted for by the bankrupt and held subject to the owner's orders, to be forwarded on demand.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

**3. BANKRUPTCY (§ 140*)—RECLAMATION OF GOODS—WHAT LAW GOVERNS.**

Where goods were conditionally sold to a bankrupt in Mississippi, whether the seller was entitled to reclaim them should be determined according to Mississippi law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

**4. SALES (§ 472*)—CONDITIONAL SALES—TITLE TO PROPERTY.**

In accordance with the law of Mississippi, where personal property was sold conditionally and title retained in the seller without any right or intent that the seller should resell the same in the ordinary course of business, the seller may retake possession on the buyer's default of payment, though the goods have passed into the hands of an innocent third person, but, if the goods are sold with a right of dispossession by the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

buyer, the goods are lost to the seller without reference to the intervention of third persons, and especially as to his creditors.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1366–1376; Dec. Dig. § 472.*]

In the matter of bankruptcy proceedings against J. B. Agnew. Petition by the F. A. Ames Company for the reclamation of goods delivered under a contract of conditional sale. From a referee's order denying the petition, petitioner appeals. Affirmed.

Following is the opinion of the referee:

To the Hon. H. C. Niles, District Judge:

During the administration of the above matter the F. A. Ames Company, a creditor of the bankrupt, filed on January 30, 1909, its petition as follows:

"Now comes the F. A. Ames Company, a corporation duly chartered, organized, and existing, and respectfully represents: That heretofore it made and entered into that certain contract, made Exhibit A hereto, with said Agnew, whereby it ships to said Agnew those certain vehicles described in Exhibit B, hereto annexed and made a part of as fully as if copied herein. That in and by said Exhibit A it was then and there contracted and agreed: 'It is expressly understood and agreed that all goods on hand and proceeds of all sales of goods received under this contract; also all goods hereinafter shipped to the maker of this contract, whether the proceeds are in notes, cash, or book accounts, are to be held as collateral security in trust, and for the benefit of and subject to the order of the F. A. Ames Company, until full cash settlement has been made of our obligations due to the said F. A. Ames Company. The title to and ownership of all goods shipped under this contract shall remain vested in the F. A. Ames Company until the price thereof shall have been paid; but nothing in this clause shall be considered a release from making payments as provided elsewhere in this contract. * * * It is further agreed, in case of death or financial embarrassment of the firm, or any member or individual making this contract, all accounts or notes for goods bought under this contract shall become immediately due and payable.' And your petitioner shows that those certain goods listed in said Exhibit B, hereunto annexed and made part hereof as fully as if copied herein, are on hand with the trustee, and are the property of your petitioner, and should be set aside. Upon information and belief your petitioner avers that there are certain notes, accounts, and cash received by said Agnew which he holds in trust for this petitioner, and, with reference thereto, this petitioner is not advised, but prays discovery with reference to the same. Your petitioner further avers that said Agnew upon December 30, 1908, made, executed, and delivered said Exhibit B, hereunto annexed, whereby the terms and conditions contained in said Exhibit A were ratified and confirmed, and your petitioner charges that, in pursuance thereof, it is entitled to the property herein described, or to the proceeds thereof, and prays that it may be afforded the relief herein grantable. Your petitioner further avers that the purchase money of said goods is wholly unpaid, and that your orator charges that said sale was made in the state of Mississippi, and is subject to the laws thereof in that behalf made and provided, and further respectfully represents that in pursuance of the statute in that behalf enacted that it is entitled to a lien for said purchase money of each of said vehicles upon each of said vehicles respectively, as shown by said Exhibit B hereto annexed. Wherefore, premises considered, petitioner prays that said matter may be considered by the court, and that said vehicles be set aside to it, or its lien established, and that the purchase money therefor be given, and that the discovery herein prayed for be made, and for such other, further, and general relief in equity and good conscience as may seem meet and proper, and as in duty bound," etc.

(The petition was sworn to by the treasurer of the claimant.)

Exhibit A, referred to in the petition, is in the following words and figures, to wit: "The F. A. Ames Company, of Owensboro, Kentucky, wholesale manufacturers of pleasure vehicles, shipped to J. B. Agnew, shipping point,

Morton, Miss., when ship. Sept. 1st. Charge to ——— Rate ———. Order No. 3115; Salesman, R. L. Buckett: Dated: 6/15 1908. Terms: 30 days net, or the buyer has the option of settling within 30 days from date of invoice by ⅓ 60, ⅓ 90, ⅓ 120 days note or cash, less net per cent. f. o. b. cars or boat, Owensboro, Ky. Credit O. K. [Here follows the order in detail, as to number of vehicles, the description of same, price, etc.] All conditions and agreements with salesmen must be stipulated on this order; verbal contracts will not be recognized. It is expressly understood and agreed that all goods on hand and proceeds of all sales of goods received under this contract; also all goods hereinafter shipped to the maker of this contract, whether the proceeds are in notes, cash or book accounts, are to be held as collateral security in trust, and for the benefit of and subject to the order of the F. A. Ames Company, until full cash settlement has been made of our obligations due the said F. A. Ames Company. The title to, and ownership of all goods shipped under this contract shall remain vested in the F. A. Ames Company until the price thereof shall have been paid in cash, or until all notes given under this contract are paid; but nothing in this clause shall be considered a release from making payments as provided elsewhere in this contract. It is further understood and agreed that notes taken by the F. A. Ames Company in settlement are not accepted as payment but only as evidence of indebtedness. We further agree that a receipt from Transportation Company for goods delivered in good order shall be a release to the F. A. Ames Company, and agree to look to the Transportation Company for all losses occasioned by rubbing, chafing, or other damages which may occur to goods while in transit, or the non-delivery of any goods receipted for. It is further agreed that in case of death or financial embarrassment of the firm, or any member or individual making this contract, all accounts or notes for goods bought under this contract shall become immediately due and payable. Accepted subject to the approval of the F. A. Ames Company. [Signed] J. B. Agnew. All jobs will be shipped just as specified above. Be sure specifications are correct before signing."

Exhibit B, referred to in said petition, is in words and figures as follows, to wit: "Owensboro, Ky., Dec. 30th, 1908. Received of the F. A. Ames Company the following vehicles of their manufacture to be held by me as their property and sold for their account. All goods are to be settled for when sold by cash at the prices shown below or by customers' notes indorsed by me which are to be turned over to them for the full value of sales made, and when collected the excess over prices named below are to be returned to me. The goods are to be insured and stored by me without charge to them and sales reported as soon as made." Here follows a detailed list of vehicles.

The evidence developed that the purchaser had the right to sell the vehicles for any sum he desired over and above the amount of the purchase price. There was no regular accounting between vendor and vendee, but there were occasional remittances in the usual course of business. At the date of bankruptcy there were 10 vehicles on hand, which were taken into possession by the trustee, and where they now are. The petition above set forth was filed as indicated, and the court, after considering the matter, denied the relief prayed for by the F. A. Ames Company, and ordered the property sold. Claimants filed their petition for review within the 10 days in such cases, and the matter is now sent up for that purpose.

It will be seen by a reference to claimant's petition that it claims a lien for the purchase money—a vendor's lien—upon the vehicles in controversy. Section 3079, Code Miss. 1906, is as follows: "The vendor of personal property shall have a lien thereon for the purchase money while it remains in the hands of the first purchaser, or of one deriving title or possession through him with notice that the purchase money was unpaid." Sections 3080 and 3081 provide for the method of enforcing this lien, which is by suit, trial, and judgment. No action was taken by the petitioner to fix his lien before the filing of the petition in bankruptcy. Certainly the petitioner cannot after the filing of the petition in bankruptcy enforce his lien for the purchase money for the vehicles in controversy. So that the petitioner must recover, if at all, in some other way. The schedules of the bankrupt, properly sworn to, show that there was no cash on hand, and the trustee in bankruptcy found none to

take into his possession, nor was there any evidence, from an examination of the bankrupt, that there were any notes, accounts, or cash held in trust by the bankrupt for the petitioner. On the contrary, the evidence disclosed that the bankrupt intermingled these vehicles with his other stock in trade, and that he sold and transferred them in the usual course of business to purchasers thereof, and that he from time to time made remittances to the petitioner on account, the same as to any other creditors. There was no evidence of any accounting, or a demand for the same, between the petitioner and the bankrupt, neither was there any evidence that any demand had been made, nor has to this day by the petitioner upon the trustee in bankruptcy, for the possession of any notes, accounts, or cash claimed in the said petition to be a trust fund by reason of the sale of the said vehicles by Agnew. It is the law of Mississippi that where such funds are commingled with the other funds and assets of the debtor, that the trust is lost, and that the creditor cannot claim any such funds as a trust fund, because of such a commingling. Billingsley v. Pollock, 69 Miss. 759, 13 South. 828, 30 Am. St. Rep. 585; Shields v. Thomas, 71 Miss. 260, 14 South. 84, 42 Am. St. Rep. 458; Citizens' Bank v. Bank of Greenville, 71 Miss. 271, 14 South. 456. So, then, the petitioner cannot recover the proceeds of the sale of the vehicles as a trust fund. The only way therefore left open to it is by reclamation proceedings instituted after bankruptcy, based upon the contract of sale between the petitioner and the bankrupt.

It is the rule in bankruptcy as to goods shipped upon consignment that, where there is a clear and unequivocal contract of consignment between the seller and purchaser, the goods will be returned to the seller by the institution of reclamation proceedings. But all the essential elements of a contract of agency must unite before the goods can be successfully reclaimed by the seller. The goods must be at all times subject to the control and direction of the seller. He must control the selling price of the goods and the manner in which such goods shall be sold. Nothing is left to the purchaser as to the price he is to obtain upon a resale. There must be a strict accounting between the seller and purchaser at the periods called for in the contract of agency, such accounting to give the names of the purchasers, the amount obtained for the goods, the number of vehicles sold, information as to whether the sale was a cash one or for a promissory note. If there be promissory notes or accounts in payment of the goods, such notes and accounts must be either forwarded to the seller or accounted for by the purchaser, and held by him subject to the orders of the seller, to be forwarded to him upon demand. All of these elements must unite to make such a contract of consignment as that the goods will be returned to the seller in reclamation proceedings. There is no evidence in the case at bar that any of these things were done by the bankrupt, or demanded by the petitioner. But, even then, such a consignment must yield to the state law.

Can the petitioner recover the vehicles in controversy upon the claim that the vehicles were sold conditionally to the bankrupt, and that there has been such a breach of condition as would entitle them to the relief sought? The case must be decided according to the laws of Mississippi. Davis v. Crompton, 158 Fed. 735, 85 C. C. A. 633, 20 Am. Bankr. Rep. 53; In re E. M. Newton Co., 153 Fed. 841, 83 C. C. A. 23, 18 Am. Bankr. Rep. 567; In re Poore (D. C.) 139 Fed. 862, 15 Am. Bankr. Rep. 174; In re Tice (D. C.) 139 Fed. 52, 15 Am. Bankr. Rep. 97; Mishawaka Woolen Manfg. Co. v. Smith (D. C.) 158 Fed. 885, 20 Am. Bankr. Rep. 317; In re Franklin Lumber Co. (D. C.) 147 Fed. 852, 17 Am. Bankr. Rep. 443; Bryant, etc., v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997, 22 Am. Bankr. Rep. 111. Authorities could be cited almost ad infinitum from decisions of the federal courts that the state law must govern; and these citations embrace the construction of statutes from every state in the Union, practically. The above are but a small number taken from decisions of the federal courts construing the statutes and following the decisions of different states. It matters not, therefore, what the courts of highest resort in other states have decided in similar cases. The decisions of the Mississippi court must govern the case at bar.

There are two lines of decisions in this state which I purpose to briefly review in this discussion. One of these lines of decisions is: Where personal

property is sold with title retained, the vendor may retake possession of the property upon default of payment, and this even though in the hands of innocent third persons, provided such property is not for resale. The other line is that goods sold with the jus disponendi by vendee are lost to the vendor, and especially so as to creditors of the latter. The two classes of decisions pursue two different paths because of this crucial question: "The test is whether or not, the goods are held for resale in the usual course of business."

Taking up the first line of decisions, we will first discuss the case of Ketchum & Cummings v. Brennan, 53 Miss. 596. In that case Brennan had sold to the other parties named a lot of machinery, consisting of engines, lathes, counter shafting, iron planer, boiler. shears, and other machinery of like nature. Upon breach of condition (title having been retained until paid for), Brennan sued out replevin for the property, and the court adjudged him to be entitled thereto. The next case is a similar one, that of Duke v. Shackleford, 56 Miss. 552. In that case Shackleford sold to Mary C. Dellahite an engine, boiler, saw, and gearing for $725, of which $500 was paid in cash, and a promissory note taken for the balance, title being retained by the vendor until payment of the purchase price. Duke purchased the property from Dellahite, and proceeding was instituted by Shackleford against Duke to recover possession of the same. The court said he was entitled to the property. It should be noted that in Mississippi a contract retaining title is not required to be recorded, and the contract exhibited in the case at bar was not so recorded. In the case of Dederick v. Wolfe et al., 68 Miss. 500, 9 South. 350, 24 Am. St. Rep. 283, Dederick sold and delivered to Wolfe and wife a hay press for $450, taking their promissory notes therefor, and retaining title to the property until fully paid for. Upon breach of condition, Dederick brought replevin against Wolfe for the possession of the property, and the court held that he was entitled to the same. In the case of Gayden v. Tufts, 68 Miss. 691, 10 South. 53, Tufts sold to Jones & Watts, of Winona, Miss., a soda fountain and apparatus; the contract and several installment notes for the purchase price thereof reciting that the title was reserved in Tufts until all the notes were paid. The contract was duly acknowledged and recorded. The fountain was placed in the drug store of the said firm, and used in their business during the season of 1890, and until January 5, 1891, when the firm failed, and made a general and voluntary assignment to Gayden, as assignee, for the benefit of creditors. The assignee contended, in the action of replevin by Tufts, that the nature of the sale to Jones & Watts was destroyed, and that the fountain was liable in his hands in favor of creditors by virtue of section 1300, Rev. Code 1880, which provides that: "All property, etc., used or acquired in such business (the business of a trader) shall, as to the creditors of such person, be liable for his debts, and be in all respects treated in favor of his creditors as his property." The Supreme Court held that the assignee held by the same title by which his assignors did, and that Tufts was entitled to the property. In the case of Tufts v. Stone, 70 Miss. 54, 11 South. 792, replevin was brought by Tufts to recover a soda fountain and apparatus distrained for rent by Mrs. D. A. Stone, as the property of Martz Bros. Tufts had sold the soda fountain to Martz, taking promissory notes therefor, and retaining title to the property until fully paid for. The instrument was duly acknowledged and recorded. In 1891 Martz Bros. made a general assignment for the benefit of their creditors, and this property, along with their other assets, was turned over to their assignee. Tufts brought his action of replevin, and the Supreme Court held that he was entitled to the property by virtue of his contract. In the case of Journey v. Priestly, 70 Miss. 584, 12 South. 799, Journey owned an undivided one-third interest in the livery stable business of Covington & Journey. On January 18, 1892, he sold to B. F. Billingsley, who became the partner of Covington, and the business was continued under the firm name of Covington & Billingsley. Billingsley paid $1,000 in cash, and gave his promissory note for the balance, which note provided that it was for the purchase money of Journey's one-third interest in the business, and that title to the same was reserved and retained in Journey until fully paid for. The contract was not acknowledged or recorded. Billingsley took possession, and, with Covington, continued the business. Subsequently Billingsley sold his one-third interest in the business to W. M. Priestly, who purchased and

paid for the same without notice of Journey's claim. Journey filed his bill in the chancery court, setting up the facts above stated, and averred that Billingsley's note was due and unpaid, and prayed that the undivided one-third interest in the partnership effects sold by Billingsley to Priestly should be subjected to the payment of the said note. The Supreme Court upheld the transaction between Journey and Billingsley, and declared the complainant entitled to the relief prayed for. In the case of Young v. Salley, 83 Miss. 362, 35 South. 571, Young brought replevin against Salley for one sorrel, blazed-faced mare, because of the following contract: "Sixty days after date I promise to pay to D. B. Young sixty-five dollars for one mare, the title of said mare is to remain in D. B. Young until paid for. This 8th July, 1902. [Signed] T. J. X. Harper." This contract was not acknowledged or recorded. Harper sold the mare to Salley without having paid for the same. The court held that Young was entitled to the animal. In the case of Watts v. Ainsworth, 89 Miss. 40, 42 South. 672, 119 Am. St. Rep. 700, Ainsworth sued out a writ of replevin against Watts for a mule, which had been sold by Ainsworth to one Fletcher, and by the latter sold to Watts. Fletcher executed his promissory note to Ainsworth, in which note the title to the mule was retained until paid for. Default was made in the payment of the same, and the court held that Ainsworth was entitled to the possession of the property. In the case of Champenois v. Tinsley et al., 90 Miss. 38, 42 South. 89, one Cunningham bought a mule from Champenois, and gave his note for the purchase price, with title until paid for. Contemporaneously Cunningham executed a trust deed to secure the payment of the note, which trust deed included the mule, and also other property. Before the deed of trust was recorded, Cunningham sold the mule to an innocent purchaser, and, after three or four successive sales, it came into possession of the Tinsleys. The note not being paid at maturity, the mule was taken from the Tinsleys by the trustee in the deed of trust, sold by him, and bought by Champenois. The Tinsleys brought replevin. The court held that Champenois was entitled to the possession of the mule, and that he had waived nothing by taking the deed of trust. In the case of Fairbanks Co. v. Graves, 90 Miss. 453, 43 South. 675, the Fairbanks Company sued Graves in replevin to recover a gasoline engine sold by plaintiff to the Freeman Service Company, from whom Graves purchased the engine. The Freeman Service Company executed its promissory notes, along with a certain other written contract, to the Fairbanks Company, which contract and notes provided for retention of title until paid for. Default being made in the payment of the purchase price, the Fairbanks Company brought replevin against Graves, and the court held that it was entitled to the possession of the same.

A careful reading of the above cases will show that in each and every one the property, the title to which was retained until paid for, was sold to the purchaser, not for the purpose of resale by such purchaser, but to be used by such purchaser in his business, be it that of a sawmill, a dispenser of soda water, the business of a livery stable (hiring out teams and doing a drayage business, and feeding animals for pay), or what not, but not for resale in the usual course of trade. In those cases above referred to wherein sawmill machinery was sold, and was the subject of litigation, it will be seen that the property was to be used, and was used, in the operation of a sawmill business, and not to be resold by the purchaser thereof. In those where horses and mules were sold the purchaser thereof was not engaged in the business of buying and selling mules, but in each and every case he purchased the animal for use, and not for resale. In the soda fountain cases, supra, the fountains were sold to the purchaser, not for resale by him, but for the purpose of dispensing soda water therefrom to customers. In the Fairbanks Case, supra, the Freeman Service Company was engaged in the plumbing business, and used the gasoline engine in controversy in conducting that business. They were not engaged in the business of selling gasoline engines, but in the plumbing business, and the engine was a necessary implement to the proper conduct of that business. Now, having shown that in each of the above cases the purchasers of the properties mentioned were not engaged in the business of buying and selling such properties, but that they were bought for use as a fixture, so to speak, or a necessary incident to their business, and not for resale, let

us now take up those cases where personal property was sold, with title retained, but the property was sold to the purchaser for the purpose of resale by him.

The first case is that of Columbus Buggy Co. v. Turley & Parker, 73 Miss. 529, 19 South. 232, 32 L. R. A. 260, 55 Am. St. Rep. 550. We ask a careful reading of that case, because it is the entering wedge that separates the decisions upon this subject into two classes. In the Turley Case, supra, J. M. Smitha ordered of the Columbus Buggy Company, of Columbus, Ohio, a certain lot of vehicles as per the following instrument: "Natchez, Miss., April 7, 1894. Columbus Buggy Co., Columbus, Ohio—Please ship to J. M. Smitha the following goods at once, at the prices herein specified, and for which we agree to give our note, on receipt of invoice, payable as per terms stated below. This order is not subject to countermand. * * * All goods on hand and the proceeds of all sales of goods received under this contract, whether the proceeds are in cash, notes or book accounts, we, as agents of Columbus Buggy Co., agree to hold the same in trust for the benefit of and subject to the order of Columbus Buggy Co. until we have paid in full, in cash, all our obligations of whatsoever nature now due or yet to become due to the said Columbus Buggy Co. And the sale and disposition of all goods received under this contract it is hereby mutually agreed shall be made and the proceeds thereof held by us as the agents of said Columbus Buggy Co. The title to and ownership of all goods received or shipped under this .contract shall remain vested in Columbus Buggy Co., but nothing in this clause to release us from making settlement and payment of our obligations as herein provided. We accept the same terms on all further orders we may send you during the year. No agreement or understanding with agents will be recognized unless noted in the order. The conditions of guarantee published in your catalogue are hereby acknowledged as binding with reference to the order. (Subject to approval of the home office.) [Signed] J. M. Smitha." The vehicles in controversy were a part of the goods received by Smitha on this order. Smitha, being insolvent and in failing circumstances, and owing the banking house of Britton & Koontz the sum of $1,700 upon notes dated February 27, 1894, and January 11, 1895, shortly falling due, on which Turley & Parker were accommodation indorsers, proposed to Turley & Parker that as he, Smitha, would be unable to meet said notes at maturity, and as they would have them to pay, that if they, Turley & Parker, would take up said notes and assume certain other obligations owing by said Smitha, he would make them a bill of sale to the property in controversy. Turley & Parker did take up the said notes by the payment of $1,700, and assumed the payment of $600 due by Smitha for rent in arrears, whereupon Smitha on February 16, 1895, in consideration of receipt in full for the $1,700 paid by the said defendants, and the assumption of the payment of said $600, sold his business, including carriages, horses, book accounts, etc., to Turley & Parker. The facts in that case show that Smitha was not only engaged in the business of a livery and sale stable, but that he was engaged in the business of selling carriages, buggies, etc., and that the only sign used at the place of such business was "J. M. Smitha, Proprietor," and that the property in this litigation was used and acquired in that business. The court held that as to Smitha's creditors the property was liable for his debts, and was in all respects to be treated as his property in favor of his creditors. The court said: "They [the creditors] might have subjected it [the property in controversy] to their demands by proceeding at law to judgment and execution, and what the law would have done it was permissible for the parties to do." The court said further: "As to the debt of $600 due by Smitha for rent, and assumed by appellees, section 4234, Code of 1892, has no applicability. To the extent of this $600, Turley & Parker were purchasers. This brings us to the remaining contention, viz.: Can the purchasers be protected in their title to the property thus acquired from Smitha against the claim of appellants, Smitha's vendors, who, by their written contract with Smitha, retained title to the property conditionally sold him until the purchase price should be paid, Smitha being a trader actively engaged in the business of hiring and selling carriages and buggies, and having authority in the contract itself to sell? The propounding of the question discloses features which distinguish the case from those where the conditional sale is made of articles for the use and consump-

tion of the buyer, or where the property is not sold to a trader presumptively for resale, but for the use of the buyer. The books, including our own state reports, abound in cases of these characters, and the rule is well settled that here in such cases the title of the conditional seller will be protected. The present case is wholly unlike any heretofore decided in this court, and must be determined independently of former adjudications. In the case before us, the vehicles were presumably sold to Smiths for resale. The course of business and common observation would, perhaps, cause that presumption. The seller has, in its contract, expressly authorized a resale by its vendee. True, the contract shows a retention of title in the seller until payment is fully made, but true, also, is it the seller has authorized the buyer to resell. To resell was one of the two purposes had in view by both parties to the contract. Now, what effect shall be given to these conflicting and inconsistent terms of the contract? And especially what effect shall be given to these inconsistent terms when the buyer is not only apparently clothed with all the indicia of ownership, but when, by the contract itself, the jus disponendi is unequivocally conferred on the buyer? It would seem that only one answer can be returned to these questions. To permit the vendor in a conditional sale of personal property bought in the course of trade for resale to retain title and at the same time authorize the buyer to resell would operate as a fraud upon innocent purchasers. This case falls within a well-recognized exception to the general rule that no one can convey to another any better title than he himself has. Benjamin, in his work on Sales, §§ 448, 449, states with perspicuity this exception. In section 448, vol. 1, 4 Am. Ed., the author uses this language: "The seller may be estopped from claiming title against a bona fide purchase from the buyer in possession by giving the buyer evidence of title or authority to sell.' And in the succeeding section an elaborate citation from Leigh v. Railroad Co., 58 Ala. 165, is made, in which this exception to the maxim, Nemo dat quod non habet, is strongly presented. Said Brickell, C. J., in that case: 'If the person intrusted with the possession of the goods and with the indicia of ownership or of authority to sell or otherwise dispose of them in violation of his duty to the owner, sells to an innocent purchaser, the sale will prevail against the right of the owner.' To the same effect the following cases will be found: Wilder v. Wilson, 16 Lea (Tenn.) 548; Winchester Wagon Co. v. Carman, 109 Ind. 31, 9 N. E. 707, 58 Am. Rep. 382; Ludden v. Hazen, 31 Barb. (N. Y.) 650; Fitzgerald v. Fuller, 19 Hun (N. Y.) 180; Cole v. Mann, 62 N. Y. 1; Armington v. Houston, 38 Vt. 448, 91 Am. Dec. 366; Rogers v. Whitehouse, 71 Me. 222; Burbank v. Crooker, 7 Gray (Mass.) 158, 66 Am. Dec. 470; Haskins v. Warren, 115 Mass. 514; McMahon v. Sloan, 12 Pa. 229, 51 Am. Dec. 601. The only case seen by us in direct conflict with the view which we adopt as the sound one is that of Lewis v. McCabe, 49 Conn. 141, 44 Am. Rep. 217. But that opinion seems to have rested largely upon the idea that the contract in the litigation was made upon and induced by the spirit and drift of the former Connecticut decisions in similar, though not identical, cases. Near the conclusion of that opinion this language is employed: 'Possession, with the jus disponendi added, has been regarded by many courts as sufficient reason for declaring a contract colorable and fraudulent without regard to the real intent of the parties. Bump on Fraud. Conv. 123, and cases referred to. We concede that there is much force in the reasoning supporting such a rule, but, at the same time, we must bear in mind the spirit and drift of our own decisions, as they may have induced the making of such contracts.' Many states have of late years enacted a statute requiring the recordation of contracts in which title is retained in the vendor, and many adjudications may be found under such statutes, but the cases cited by us were decided independently of statute, and, as it appears, before the enactment of statutes."

In the case of Parry Mfg. Co. v. Lowenberg, 88 Miss. 532, 41 South. 65, the Parry Manufacturing Company turned over to W. H. Harvey, of St. Joseph, La., a lot of vehicles under a contract reserving title, but giving him the power to dispose of them as their agent, allowing him commissions as such, and requiring reports from him; he being a general merchant. He became indebted to Lowenberg and others, and shipped to Lowenberg, a creditor, at Natchez, Miss., a lot of the vehicles, with instructions to sell them and to distribute the proceeds pro rata to his debts to that firm and to his other creditors. The con-

tract reserving title was not recorded, and Lowenberg and the other parties interested had no notice of it, and believed that Harvey had the only claim to the vehicles. The Parry Manufacturing Company brought replevin for the vehicles. The Supreme Court said: "We are unwilling to extend the rights of the owner who turns over property with reservation of title, but giving the jus disponendi, beyond the present limits allowed by the authorities. This court has held in Columbus Buggy Co. v. Turley, 73 Miss. 537, 19 South. 232, 32 L. R. A. 260, 55 Am. St. Rep. 550, under like circumstances, that a creditor taking from the holder one of the articles in payment of a debt due to him got a good title. In the case before us I. Lowenberg & Co. were not mere naked trustees, but interested in that they were creditors, and were to get their share of the proceeds in payment pro tanto of the debt due them. So we think the title passed from Harvey to them in the case now in hand."

The bankruptcy law contemplates equal distribution of the assets to the general creditors, share and share alike. Such a distribution was made in the Parry Case, though no bankruptcy proceedings were had. The debtor turned over all of his property to a creditor, making him his trustee, and directing that he distribute the proceeds ratably among his creditors. The bankruptcy law does the same. Agnew filed a voluntary petition in bankruptcy, and turned over all of his assets to the court, to be distributed among his creditors. Note how like the contract in the Columbus Buggy Co. Case, supra, is the contract exhibited in the case at bar. These vehicles were sold by the F. A. Ames Company to Agnew for the purpose of resale, the goods were resold in the usual course of business, and, since Agnew had the jus disponendi, it passes to the trustee for the benefit of creditors. In the case of Fairbanks Co. v. Graves, supra, the Supreme Court held that that case did not fall within the rule announced by the case of Columbus Buggy Co. v. Turley, supra, and the court said further: "There is nothing in the law which prohibits one merchant from selling an article of merchandise to another merchant with reservation of title until the purchase money is paid, unless the article sold is meant to be resold, or is of such character as that it may be fairly inferred, when the sale is made, that the purpose of the purchase is to resell it." The contract in controversy appears clearly to be one of conditional sale. If it be so, then, under the authority of the Columbus Buggy Co. Case, and the Parry Case, supra, this contract is void as to creditors. But if mistaken in this, and it should be held that this contract is a mortgage, and not a conditional sale, then the petitioner must fail, because such a mortgage is invalid as to creditors, under the authority of Belknap v. Lyell, 89 Miss. 197, 42 South. 799. If it should be held that the clause in the contract exhibited in the instant case, which provides that the notes, cash, and accounts shall be considered as the property of the F. A. Ames Company, is a pledge or a mortgage, with a trust feature attached thereto, we say that the petitioner must fail for two reasons: The trust is lost, because of the commingling of the proceeds of the sales with the other assets, and possession of the notes, accounts, and cash representing such sales were not demanded or taken possession of by the petitioner, or anything done by him to procure such assets. Under the authority of the Belknap Case, supra, the court held that a mortgage on a debtor's stock of goods was absolutely void. It cannot be said that the petitioner herein should be denied the prayer of its petition because the rights of third persons are not affected, since our court has held in the Parry Case, supra, that the rights of no third person were in jeopardy except those of the creditors of the debtor, Harvey. Petitioner in the instant case claims that, because the vehicles sought to be reclaimed here have not passed into the hands of innocent purchasers for value, the controversy here is one directly between the F. A. Ames Company and the bankrupt, and that no third person is concerned. In the Parry Case, supra, the vehicles were turned over to Lowenberg, to be sold, and the proceeds to be distributed among the debtor's creditors, share and share alike. The rights of no third person were concerned in that case, and yet the court held that the creditors were entitled to the proceeds of the sale of the vehicles.

I think the ruling heretofore made, denying the prayer of the petition, and directing a sale of the vehicles, should be upheld.

Green & Green, for petitioner.
Alexander & Alexander, for trustee.

NILES, District Judge. Coming on to be heard the matter of appeal by the F. A. Ames Company from a decision of the referee herein in disallowing its petition for reclamation of a certain lot of vehicles in the hands of the trustee in bankruptcy of the estate of J. B. Agnew, bankrupt, and the court having duly considered the said matter and being of opinion that the decision of the referee was correct and that the said decision should be affirmed, it is therefore ordered that the said decision be, and it is hereby, affirmed, and the trustee is directed to sell the said vehicles according to law, and to distribute the proceeds of said sale to the creditors of said estate.