## Sherman & Sons v. United Clothing Stores.

(Decided March 16, 1926.)

### Appeal from Fayette Circuit Court.

1. Contracts.—In construction of contract, if evidence as to intention of parties is conflicting, case should be submitted to jury. otherwise it is question of law for court.

2. Principal and Agent—Seller Will Not be Held to Notice that Agent's Authority was Limited by Letter of Introduction to Contract for Goods on Consignment, where Buyer Subsequently Ratified Agent's Transaction.—Seller will not be held to notice that agent's authority was limited to contract for goods to be sold on consignment, as stated in letter of introduction, where it clearly appears that agent made full report of transaction to buyer, who ratified and approved what he had done.

3. Sales—Conduct and Statement of Buyer Held to Negative Sale of Goods on Consignment, and to Indicate Intention to Make Contract of Sale or Return.—Conduct of buyer in receiving goods, fixing price, making own terms, and intermingling proceeds with other funds together with statements relative to understanding that unsold goods could be returned, held to clearly negative sale on consignment and to indicate an intention to make contract of sale or return.

4. Sales—Form of Invoice Indicating Straight Sale in Harmony with Other Matters Showing Real Agreement May be Considered in Evidence.—Where form of invoice used in making sale indicated a straight sale, and was in harmony with other matters constituting real agreement, it may be considered with other evidence.

5. Sales—Buyer's Evidence Held Consistent with Seller's Theory of Contract of "Sale and Return," and Not Consignment, Requiring Directed Verdict for Seller.—In seller's action for balance due for sales of merchandise, defendant's evidence held consistent with

seller's theory that goods were sold on straight sale with privilege of returning unsold portion, and not on consignment, making matter of intent a question of law for court, requiring a directed verdict for seller.

ALLEN, BOTTS & DUNCAN and THOMPSON & THOMPSON for appellant.

D. C. HUNTER and DON FROMAN for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Each of the parties herein is a corporation engaged in selling clothing. Sherman & Sons is a wholesale dealer in the city of Louisville. The United Clothing Company formerly conducted retail stores in the cities of Ravenna, Lexington and Hazard. Later reference to the parties will be under the caption style of plaintiff and defendant, respectively.

In this suit plaintiff sought to recover $4,341.00 from defendant as the balance due it on account for sales of merchandise. The defense was that the articles charged on the account were delivered to it under a contract for sale on commission; that it sold only a few of these, and that those remaining were destroyed by fire without negligence on its part; that it had accounted and paid for such as were sold up to a few days before the fire and was willing to pay for such as had been sold thereafter, but denied liability for those destroyed by fire. The reply does not charge the defendant with any blame in connection with the fire, but traverses the other affirmative averments in the answer. Defendant's contention was upheld in a jury trial and plaintiff appeals.

Each party contends that it was entitled to a directed verdict. Plaintiff criticises while defendant endorses the instructions given; defendant also claims that the contract was partly oral and partly in writing, and we may proceed on that assumption. The primary object of construction is to ascertain the intention of the parties, and in this character of case, if the evidence as to this is conflicting, or the facts and circumstances are such as to raise a difference of opinion in the minds of reasonable men as to such intention, the case should be submitted to the jury under appropriate instructions, otherwise it is a question of law for the court. 24 R. C. L. section 275; 23 R. C. L. subject Sales, section 152;

Aetna Powder Co. v. Hildegrand, 137 Ind. 462; Hurt v. Ridenour, 139 A. S. R. 259; Holbrook v. White, 24 Wend. 169; 35 Am. Dec. 607. A determination of these questions requires a clear understanding of the facts.

Plaintiff's manager, Will Sherman, testifies that on the 3rd of December, W. R. Anderson presented to him the following letter from defendant:

"Sherman & Sons,
        Louisville, Ky.

"Gentlemen.:

"This letter will introduce the manager of our clothing department, Mr. W. R. Anderson, who will explain our situation in staging the biggest sale that we have ever had during our nine years in business. If you can take care of us on some consignment of suits and overcoats to be moved quickly at close prices, both your firm and ours can make a little money and sell *and* bunch of merchandise.

"Yours truly,
"UNITED CLOTHING STORES, INC."

He says Mr. Anderson stated his firm was going out of business and explained the character of sale he was putting on, and said that he would like to buy some goods on consignment; that he told Mr. Anderson that he could not do that, but would be willing to sell him a big bunch of goods, at a low price and extend the privilege of returning the unsold goods at the end of the sale, provided the unsold bunches were not too broken; that Mr. Anderson agreed to this and that he invited him to return after lunch in order that he might revise the credit files on his firm. In the meantime he investigated the financial rating of that company and it was satisfactory. On Mr. Anderson's return he introduced him to his salesman, Mr. McClain, who showed him the goods that they were willing to dispose of in this way; that Mr. Anderson made the selection and a memorandum was made by the salesman and typed in duplicate by the stenographer, one of which was retained by the firm and the other given to Mr. Anderson; that Mr. Anderson asked about the terms and he explained that the regular terms would not be applicable, but that cash payments should be made at the end of each week at least equal to the amount of the goods sold in consideration of the privilege of returning

the goods not sold at the end of the sale; that Mr. Anderson agreed to this and asked him to endorse it on the order; he did make the endorsement on the order given Mr. Anderson but not on the duplicate which he retained; he is unable to remember exactly what the statement was. Invoices for the goods were made out on regular sale forms thus: "Sherman & Sons, Incorporated, clothing makers, Louisville, Ky., Dec. 3, 1921. Sold to United Clo. Co., Lexington, Ky. Terms strictly net 30 days," and the bill was charged to defendant's account as a straight sale. Subsequently defendant gave a telephone order for some other goods which were selected by plaintiff and handled in the same way.

Only Anderson and Will Sherman were present at the time the terms were agreed upon, but Wm. Sherman is corroborated by McClain and other witnesses in the other particulars mentioned, except by his typist, who is now in the employ of another firm, and who corroborated defendant's witnesses as to the notation upon the order.

For the defendant it is shown that practically all of its stock is owned by Mr. Boone; that in the fall of 1921 it decided to quit business and closed its stores at Ravenna and Hazard, shipping the goods to Lexington. It also sold and assigned a long time lease which it held on its storehouse in Lexington, and in order to make a quick disposition of its remaining goods decided on a closing out sale. Much of the clothing on hand had been bought at high prices, and for this sale it desired some cheap clothing to fill in the gaps, if this could be procured for sale on commission, and for this purpose sent Mr. Anderson to see Sherman & Sons, giving him the letter of introduction quoted above.

Mr. Anderson states that he presented this letter to Mr. Sherman, who read it and said: "I don't know about this; we do not like to send stuff out on consignment; we had trouble once before in a transaction of this kind. You can come back a little later on and we will think about it," and asked me if I had had lunch, and I told him "no" and he said suppose you come back after lunch. "I told him that Mr. Boone thinks this an opportunity for you to get rid of some merchandise if you happen to be overstocked with anything he can use in this sale, and a chance for both of you to make some money. I told him that this is an honest-to-God quit business sale and that Mr. Boone had put in some excessive advertising on the sale, and tried to make it plain to him that it was one of

the biggest things ever pulled in Lexington and that I was there to get a consignment of goods." At Mr. Sherman's suggestion he left and returned after lunch, at which time Mr. Sherman told him, "We have talked over the proposition and are going to let you have some goods on consignment." Thereupon he introduced Mr. McClain and the three selected the goods. Witness admired some suits of good material but Mr. Sherman would not put them in. A memorandum of the goods selected was taken by the salesman and typed, and he was given a duplicate of it. He examined the order and suggested to Mr. Sherman that he write across its face "under consignment" to show Mr. Boone that he had "gotten" the goods under the order as directed. Mr. Sherman agreed to this and endorsed and signed a notation on the order to the effect "that the goods were to be shipped on consignment and to be paid for each week as sold. All unsold goods to be returned to Sherman & Sons." He further states that there was nothing said about his buying any goods. On his return he gave the order memorandum to Mr. Boone and explained the transaction to him. Mr. Boone testifies that Anderson was given no authority except as stated in the letter of introduction; that upon his return Anderson gave him the duplicate order; that he examined the notation carefully and that it read: "That the goods were sent on consignment to be settled for weekly as sold and any unsold goods to be returned to Sherman & Sons." This order, together with all his other papers and invoices, were destroyed in the fire but the notation was seen and read by a number of witnesses. These witnesses were intrduced and corroborated him in this particular. Mr. Boone further testifies that after the delivery of the goods he signed and mailed a letter to Sherman & Sons, which plaintiff denies receiving. A transcription of this letter, taken by the stenographer from her note book after the fire, was introduced in evidence over objection of plaintiff. Assuming its admissibility it reads:

"Sherman & Sons,
    Louisville, Ky.        :

"Gentlemen:

"The thirteen cases of goods received. Thank you for your promptness. Now what we ought to do is to move a lot of goods in a hurry and convert our merchandise and yours into ready cash.

"Some of the suits and overcoats look fine; on the other hand some are sleazy. For instance No. 4480 and similar fabrics at $16.50 look pretty punk and people are going to expect these suits in the sale for no more than $14.95 to $16.95.

"We candidly believe that if you want to move a quantity of these cheaper suits it behooves you to trim these few numbers to the quick so that we can throw them in for the slaughter Friday morning. We are going to mark our merchandise low with the intention of moving it within the next few weeks.

"We are awaiting your response with interest and will be guided by what you advise, so do not forget if we are to move the merchandise in a hurry we must have the price for what the people will fall for.

"Yours truly,
"United Clothing Stores, Inc."

The defendant paid the freight, received the goods and fixed the selling prices. It placed a tag upon each garment upon which was written the letters "Sher" and the cost of the article in defendant's code and the selling price in figures based on a profit of 33 1-3%. Another tag was labelled "Quit sale price," and this was marked in figures based on 10% profit above the invoice price, thus indicating a large reduction below the regular selling price. The goods were placed in regular stock and the proceeds of all sales intermingled. Upon a sale the tags were retained and at the end of the first week the value of the articles sold at the invoice price was computed from these tags, and defendant remitted to plaintiff the sum of $400.00 as the amount thereof. The fire occurred before the end of the second week, preventing a second accounting.

However, on cross-examination, in answer to categorical questions, practically all of defendant's witnesses admitted that the written notations may have been "goods sold or shipped on consignment to be paid for weekly as sold with the privilege of returning unsold goods at the end of the sale," and such is the evidence of Mr. Anderson, who was also asked: Q. "Can you answer the question whether Mr. Sherman told you after thinking the matter over that he would let you have a shipment of goods such as you wanted, you and Mr. Boone, upon the understanding that the goods were to be paid for as sold,

and that you, or the United Clothing Company or Mr. Boone would have the right to return any unsold goods at the end of sale?" A. "That is the substance of it, yes." Q. "That is what he told you, and that is the way you understood it?" A. "Yes, that is the substance of it." Q. "In other words, Mr. Boone could pay for them all if he wanted to or return the unsold goods?" A. "Yes, it was optional if he wanted to pay for them." Q. "I just want to get your understanding about it. . . . I am asking you whether or not if that was the understanding right then between you and Mr. Sherman?" A. "Yes, I guess so." Q. "When you got back to Lexington you gave it (the order) containing Mr. Sherman's notation to Mr. Boone and told Mr. Boone that you had arranged with Mr. Sherman to get a lot of cheap line goods into the sale upon the understanding that Mr. Boone would pay for them as sold from week to week with the privilege of returning the unsold goods at the end of the sale?" A. "That is about what I told him." Q. "That is the substance of it?" A. "Yes."

Mr. Boone himself was asked these questions: Q. "As you recall, the memorandum on there was 'Goods sold on consignment to be paid for weekly as sold or each week as sold, with the privilege of returning unsold goods at the end of sale?'" A. "Yes. . . . " Q. "Mr. Anderson did make a report to you as a result of the trip?" A. "Yes." Q. "And he told you that he had made an arrangement with Mr. Sherman in which he was willing to let you have the goods you wanted upon the understanding that you would pay for them every week, from week to week, as the goods were sold with the privilege on your part of returning any that were left over at the end of sale?" A. "Yes."

(1) Defendant insists that Anderson's authority as agent was granted and limited by the letter of introduction, which must be strictly construed, and which was notice to plaintiff that he was authorized to contract for goods to be sold on consignment, but not to purchase; that otherwise construed the contract would be *ultra vires* and unenforceable, and therefore it was entitled to a directed verdict. It is unnecessary, however, for us to discuss this question as it clearly appears that Anderson made a full report of the transaction to Boone, who ratified and approved what he had done, and directed the sales of the goods, hence a directed verdict for defendant was properly refused.

(2)   The debatable question is whether the agreement of the parties constituted a "sale or return" in which the title with its attendant rights and liabilities immediately vests in the buyer, subject to being divested upon his exercising the option to return; or a consignment for sale which creates the relation of principal and agent, the title remaining in the consignor.   Meechem on Sales, sections 675-7; 35 Cyc. 290; 23 R. C. L., sub. Sales, sections 33-34-35; 24 R. C. L., sub. Sales, sections 720-21-22.

It is argued for defendant, that it was closing out, not purchasing new supplies; that the parties would not have made a contract violating Anderson's instructions; that both parties knew the commercial meaning of the word "consignment" and used it in that sense, thus negativing any idea of a sale, and that this is emphasized by the letter written by it shortly after the receipt of the goods, in which they were referred to as "your" merchandise, as well as by the concluding phrase in the written notation, and that these matters indicate an intention of delivery for sale on commission.   While ingenious, the argument is not convincing.   As has been frequently said, "there is no 'magic' in the words 'consignment,' 'agent' and similar words."   Ferry v. Hall, 188 Ala. 178; Meechem on Agency, section 2499; In re Wells, 140 Fed. 752; Piper v. Oakland Motor Co., 109 Atl. 911; Braun v. Kelly, 146 Pa. 519, 23 Atl. 389, 23 A. S. R. 811; Mack v. Drummond Tob. Co., 48 Neb. 397, 67 N. W. 174, 58 A. S. R. 691; McGaw v. Hanway, 120 Md. 197, 87 Atl. 666; Anno. Cases, 1915A 601; Bendix v. Stavers C. Co., 174 Ill. App. 589.

> "The courts look beyond mere names and within to see the real nature of the agreement and determine from all its provisions taken together, and not from the name that has been given to it by the parties, or from some isolated provision, its legal character and effect."   23 R. C. L., subject Sales, section 34, *supra*.   See also Pick v. Hines, 17 Atl. 984.

It will be observed that on cross-examination Mr. Anderson admits that Mr. Sherman let him have the shipment of goods on the understanding that they were to be paid for as sold, with the right in defendant to return any unsold goods at the end of sale, and so reported to Mr. Boone; that he understood this to give defendant an option to return them or to retain them all and pay for

them.  Mr. Boone corroborates him in this respect and admits that he accepted the goods with this understanding.  Such understanding or construction of the contract by the parties is consistent with their admissions, *supra,* and reflects their intention in making the contract.  Consistent therewith defendant paid the freight, received the goods, fixed the price, marked them in its private code, selected its customers, made its own terms, intermingled the proceeds of sale with its other funds and exercised absolute dominion over all, without any direction or suggestion upon the part of the plaintiff, who, so far as this record shows, had no power to interfere in any of these matters.  This conduct and the above cited statements of Mr. Anderson and Mr. Boone clearly negative the theory of any intention to create a covenant in the contract requiring the defendant to return the unsold goods at the end of sale.  Also they are clearly inconsistent with the relation of principal and agent and are indicative of an intention to make a contract of "sale or return."  Lempe v. Rycus, 42 Pac. 169; Ferry v. Hall, 188 Ala. 178; Arbuckle Bros. v. Kirkpatrick, 98 Tenn. 221, 36 L. R. A. 285; In re Agnew, 178 Fed. 478; In re Miller v. Brown, 135 Fed. 868; Hotchkiss v. Higgins, 52 Conn. 205, 52 A. S. R. 582; In re Wells, 140 Fed. 752; Arbuckle Bros. v. Gates, 95 Va. 802.

This conclusion is strengthened by the form of invoice, the heading of which indicates a straight sale. Perhaps this would have little weight if in conflict with the real agreement, but as it is in harmony with the matters above suggested it may be considered with the other evidence.  Nor are any of the matters suggested above in conflict with defendant's evident intention not to purchase new goods that might be left on hand at the end of sale, as this purpose was fully effectuated in being given the privilege of returning the unsold goods at the end of sale.  The letter asking a reduction in the invoice price of the goods to speed up sales is applicable to etiher form of contract, except in the use of the words. "your merchandise and ours."  We may infer from these words that Mr. Boone was mistaken as to the legal effect of the transaction and thought the title did not vest; but even if he was of that opinion there is nothing in the letter that negatives his intention to have absolute control over the goods or that evinces a purpose to pursue a different course of conduct from that indicated above, hence it does not militate against the conclusion reached.  It thus

appears that all of defendant's evidence is consistent with that view of the case, and eliminating the evidence for plaintiffs under the rule above quoted the matter of intent was a question of law for the court, which should have given a directed verdict for plaintiff.

While under different states of fact there is an apparent lack of harmony among the reported cases, in none to which our attention has been called has a different conclusion been reached where the facts corresponded to those in this case. Barnes Safe Co. v. Block Bros., 138 W. Va. 158, 45 A. S. R. 846; Sattler v. Hallock, 160 N. Y. 291, 73 A. S. R. 687; Fleet v. Heertz, 201 Ill. 594, 66 N. E. 858; Strum v. Boker, 150 U. S. 312, relied upon by defendant, may be distinguished from this case.

In the Barnes case the contract is not set out in the opinion, but it is shown that the consignees were constituted agents for the sales of Barnes safes. Their names were printed on each safe as *agents* under the name of the manufacturer. It was shown that they could only sell through the manufacturer and the money collected on sales passed directly through them to it; in other words, the relation of principal and agent was fully established.

In the Sattler case certain farmers furnished produce at a fixed price to defendants to be manufactured into pickles, etc., at the cost of defendants, the profits to be divided after deducting expenses. While the goods were sold by defendant each party had a representative throughout the transaction. A clear case of bailment.

In the Fleet case, Fleet positively refused to sell Heertz any goods on account, but proposed to consign him a certain quantity of goods to be handled for his, Fleet's, account, the proceeds to be held in trust, settlement to be made at certain stated periods, Heertz to receive the profits over and above the invoice price. Clearly this was a consignment for sale.

In the Strum case, Boker & Co. enclosed an invoice in the regular form of sale to Strum, reading: "Enclosed please find our bill for sundry firearms, etc., amounting to $39,887.60, for which amount please give us credit on consignment account. As mutally agreed we consign these arms to your care to be shipped to Mexico and to be sold there by you to the best advantage." It was further provided that they should be insured for Boker & Co.'s benefit, and if there was a loss, they were to bear it, but if a profit it should be equally

divided between the two. A second invoice was consigned and a similar letter written in which it was provided that in case the goods should not find a ready sale, they should be returned to Boker & Co., with the further provision that if they did not bring the prices charged in the invoice they should be returned to them. In that case Boker & Co. retained control and direction of the goods as principal. A clear case of bailment.

It' thus appears that the controlling facts in each were essentially different from those in this case.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.