**Ella GRAY, individually, and as Administratrix of the Estate of Leo Gray, Plaintiff-Appellee,**

v.

**INTERNATIONAL ASSOCIATION OF HEAT & FROST INSULATORS AND ASBESTOS WORKERS, LOCAL NO. 51, Defendant-Appellant.**

**No. 20677.**

United States Court of Appeals, Sixth Circuit.

Sept. 8, 1971.

Herbert L. Segal, Louisville, Ky., for defendant-appellant; Charles R. Isenberg, Irwin H. Cutler, Jr., Louisville, Ky., on brief.

E. Gerry Barker, Louisville, Ky., for plaintiff-appellee; Robert L. Durning, Jr., Louisville, Ky., on brief.

Before CELEBREZZE and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Defendant appeals from a judgment of $12,316, entered upon a jury verdict, against Local No. 51 of the International Association of Heat and Frost Insulators and Asbestos Workers. The action was for damages arising out of the local's alleged breach of its duty to use all legal means to assist plaintiff, Leo Gray, to gain employment with North Brothers, Inc., a construction firm engaged in work at Lexington, Kentucky. Article XXI, Section 12, of the Union's Constitution provided:

> "It shall be the duty of the Business Agent to investigate all complaints referred to him and act in conjunction with and under the direction of the Executive Board. He shall use all legal means to procure employment for the members of the Local. The Business Agent shall cooperate with the Job Steward in the enforcement of the Code of Workmanship and report to the Local the quality of the work being performed in the application of insulating materials on any and all jobs he visits."

Leo Gray was a member of Local 51. He died during the pendency of the action and his widow, Ella Gray, thereafter prosecuted the suit as widow and administratrix of Leo Gray's estate. The cause was tried and judgment entered in the United States District Court for the Western District of Kentucky at Louisville. The propriety of the amount of the verdict is not in question. As initially filed, the action included claims against North Brothers, Inc., construction contractors, and the International Union. In a previous appeal, we upheld a District Court dismissal of plaintiff's claims against North Brothers and the International Union, as well as suit against the Local for breach of its *statutory* duty of fair representation. 29 U. S.C. § 185(a)—LMRA § 301. We, nevertheless, remanded the case for trial upon the plaintiff's claim that the Local breached its *contractual* duty to assist Leo Gray to obtain employment. Gray v. Internat'l Ass'n of Heat & Frost Insulators & Asbestos Workers, Local No. 51, 416 F.2d 313 (6th Cir. 1969). The judgment entered upon such trial is the matter now before us.

Appellant contends that the District Court erred in overruling its motions for a directed verdict, for judgment n.o. v. and for a new trial; that the District Court erred in its instructions to the jury; that the District Court lacked jurisdiction; that the action is barred by the statute of limitations, and is barred by Gray's failure to exhaust the union's grievance procedures. We affirm the judgment of the District Court.

1. Jurisdiction and Statute of Limitations.

We first dispose of two threshold questions—jurisdiction and the statute of limitations. Appellant argues that the District Court lost pendent jurisdiction of the cause when we sustained dismissal of the case against North Brothers, the International, and the suit against the Local for alleged breach of Section 301 of the Labor Management Relations Act. We disagree.

■ In view of the substantial time and energy that had already been expended at the time these claims were dismissed, the District Court clearly had the discretion and power to retain jurisdiction of the pendent state claim. We do not believe his decision to be an abuse of discretion. Rosado v. Wyman, 397 U.S. 397, 404–405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); United Mine Workers v. Gibbs, 383 U.S. 715, 725–727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■■ Similarly, we find no merit in appellant's contention that the instant action is barred by Kentucky's five year statute of limitations governing contracts not in writing. KRS § 413.120(1). We hold that the Kentucky fifteen year statute of limitations on written contracts, KRS § 413.090(2), is applicable here. Contracts that are partly oral and partly in writing, or a written contract so indefinite as to require parole evidence of its terms are generally

not "contracts in writing" within the meaning of the statute. Mills v. McGaffee, 254 S.W.2d 716 (Ky.1953). The contract involved here, however, is made up of the union constitution and its by-laws. These are completely in writing and require only identifying appellee's deceased husband as a party thereto.

> "Generally speaking, where an instrument containing all the terms of a completed contract between two parties is executed by one of the parties and accepted or adopted by the other, the instrument constitutes a contract in writing within the meaning of the statutes of limitations, notwithstanding the fact that the instrument may not be signed by the latter." Annot., 3 A.L.R.2d 809, 819 (1949).

Gray's application for union membership and its acceptance, together with the union constitution and bylaws, constitute a written contract. Kentucky courts do not seem to have spoken on this issue, but their decisions indicate they would agree. See Mills v. McGaffee, 254 S.W. 2d 716 (Ky.1953); Lyons v. Moise's Ex'r, 298 Ky. 858, 861, 183 S.W.2d 493 (1944).

### 2. Motion for Directed Verdict.

We set out the facts which could be found by the jury. We hold that plaintiff's proofs thereon justified submission of the case to the jury. Appellee's deceased husband, Leo Gray, had been a mechanic[1] member of Local 51 since 1927. He and his wife had moved to and were residing in a trailer in Freeport, Texas, while he was employed by Precision Insulation Company. He desired to return to work in Kentucky, allegedly to satisfy eligibility requirements for insurance and pension benefits under the Union's Health and Welfare Fund Program. He needed to work six more weeks within Local 51's jurisdiction.

Early in 1960 Gray wrote a letter to Herbert Elmore, business agent of Local 51, telling of Gray's desire to return to Kentucky. Elmore replied that there would be jobs coming up at Lexington, Kentucky, in connection with construction of the University of Kentucky Medical Center; that he, Elmore, had heard that North Brothers had the contract; that he would check into it and let Gray know about it. Gray then telehoned Elmore and arrangements were made for Gray to come to Lexington with his trailer. He did come about the first of April in anticipation of getting a job at the North Brothers project, although he did not then have a definite promise of such a job. Gray paid his minister $300 to haul the trailer the 1,000 miles from Texas to Lexington. Elmore had told Gray to "take your trailer to Lexington; that's the job you will go on." When he arrived, Gray contacted Elmore by telephone and was told to see a Mr. H. W. Adams, the working foreman on the North Brothers job. Adams was in charge of the hiring, and was also a member of the Knoxville Local of the same International as was defendant, Local 51.

On April 19, Gray reported to the construction site and spoke to Adams. Adams told him it would be a week to ten days before he could start. Gray again reported on the job on May 19, and received the same answer. Between April 19 and May 19 and thereafter, Gray spoke to Adams on frequent occasions when Adams would be visiting a friend, William Sisk, who lived in the same trailer park as Gray. Each time Adams put Gray off with the same answer—it would be a week to ten days.

Gray learned that Adams' friend Sisk, whose status in the union was that of an "improver"—in the nature of an apprentice—was employed by North Brothers at a "mechanic's" wage. He insisted to the business agent, Elmore, and at a union meeting that Sisk's employment while he, Gray, was denied employment

---

1. The Local's constitution provides for two types of membership: *mechanics*, who are skilled insulators, and *improv-* *ers*, who remain apprentices for 4 years before making application for standing as a mechanic.

violated the bargaining agreement between North Brothers and the Local. Gray was told that he had no ground for his charges.

It is appellee's position that during the period Gray offered himself for employment, North Brothers was in violation of the agreement under which it worked with Local 51 as it pertained to the hiring and employment of the second year improver, William Sisk. Appellee argued that in failing to correct these violations, business agent Elmore and the Local failed to "use all legal means to procure employment" for Gray, in violation of Art. XXI, Sec. 12, of the Union Constitution, set out above.

Plaintiff's evidence, viewed in its most favorable light, does permit a finding that at the time Gray first applied for work on April 19, 1960, only Sisk, an improver, one W. B. Beasey, a mechanic, and Adams, the working foreman and also a mechanic, were on the job. Appellant's evidence disputed this factual contention. Sisk, a second year improver, earned the wages of a third year improver during April and mechanic's wages beginning in May.

The Union Constitution provides:

"Section 8. Improver membership shall be granted in such numbers as to have available a ratio of one Improver to four Mechanics employed in a shop. No Improver shall execute work unless in company with a Mechanic. Improvers shall under no circumstances be recognized as Mechanics."

With regard to Improvers' wages, it states:

"Section 7. Improvers shall serve a four (4) year period at the craft, and during such time they will be paid at a maximum of four rates which shall be in the minimum amounts of 50, 60, 70 and 80 per cent of the Mechanic hourly rate for the first, second, third and fourth years respectively, after which they shall be entitled to apply for Mechanic's examination, which examination shall be conducted by a joint committee of the local and employers. An Improver failing to satisfactorily pass this examination shall not be re-examined within six (6) months."

Article III of the Collective Bargaining Agreement provides:

"The ratio of Improvers may equal but not exceed a ratio of one (1) Improver to four (4) Mechanics employed in a shop. No Improver shall execute work unless in company with a Mechanic."

Article VIII then provides the wage scale for Improvers and Mechanics which corresponds with the percentage rates designated in the Constitution.

It was plaintiff's position that the Union's Constitution was violated when employee Sisk, whose status was that of an "Improver," was hired and plaintiff Gray was denied employment. There was evidence that the Local and its business agent knew this but failed to press for vindication of Gray's right to employment. Opposing witnesses testified as to the meaning of the Constitution's provisions relevant to such subject. It is not contended that it was improper to receive evidence as to the Constitution's meaning, and the Court properly submitted the question for the jury's resolution. Sherman & Sons v. United Clothing Stores, 214 Ky. 526, 527, 283 S.W. 1022 (1926). The jury found that a job was open for a mechanic under the 1-4 ratio during the period Gray offered himself for employment. This was in answer to one of several interrogatories presented to them.

Even though Adams, as the hiring agent for North Brothers, may have been in violation of the Union's Constitution in the employment of Sisk, the "improver," correction would not necessarily have resulted in employment of plaintiff Gray. There were many other members of Local 51 with the same qualifications as Gray—"mechanics"—who were unemployed at the time. But Gray's position is that Local 51 and its business agent were required to demand a correction of North Brothers' fault

and under the total circumstances, to press for Gray getting the job then made available. Adams, the hiring foreman, gave as a reason for not hiring Gray his belief that the latter's physical condition would forbid his performing the job. No such reason was given to Gray who insisted that he had the needed physical ability, as well as being otherwise qualified as a "mechanic."

◼ Critical issues of fact were framed by the conflicting evidence. We have set out the facts which the jury could have found from the evidence presented. We deal with denial of defendant's motion for a directed verdict. It is familiar law that in testing such a motion the evidence and all inferences that may be legitimately drawn therefrom must be viewed in the light most favorable to the plaintiff. Patterson v. Pennsylvania R. R. Co., 238 F.2d 645, 646 (6th Cir. 1956); Sutton v. Combs, 419 S.W.2d 775, 777 (Ky.1967). Applying that test, we consider that it was proper to submit the question of Appellant's breach of contract to the jury.

3. The District Judge's Instructions.

Appellant asserts that it was error for the District Judge to instruct the jury as follows:

"I instruct you that under the law the employment of Union members at the Chandler Medical Center was a matter within the sole judgment of the employer North Brothers. By this, I mean North Brothers did not have to give Mr. Gray a job provided that North Brothers was at the time required by the contract, following in its employment practices its contract with Local 51 as to the four to one ratio and the proper working of Mr. Gray and if North Brothers did violate its employment contract with Local 51 with respect to the ratio or the manner in which it worked Mr. Sisk then it was the law that it was the duty of Local 51 as the representative of Mr. Gray as one of its members, to use all legal means available to it to correct said contract violation by

North Brothers, if you find any such violation."

◼ While more precise language would have improved it, we do not find reversible error in the giving of this instruction. North Brothers did not have to hire Gray; but if North Brothers was in violation of the contract, it became the legal duty of the union, as a representative of Gray, to correct it. The action is not against North Brothers for failure to hire Gray, but against the union for the failure to exercise its legal duty in that it did not in good faith pursue the alleged violations. The union makes much of the fact that Elmore on one occasion before Gray arrived in Lexington did approach Adams and request that he consider Gray. The evidence also shows that once Gray was rejected and complained of violations, no action was taken. During all of the relevant period, Elmore visited North Brothers' job site two or three times a week specifically to check on possible contract violations. But, except for an initial proposal to Adams to hire Gray, he did nothing further toward helping him. He testified,

"Leo [Gray] took the ball and he went on with it. So I just washed my hands of the whole affair. I mean, once he did his own, tried to secure his own employment, if he couldn't get it, I sure couldn't have got him a job with them."

4. Failure to employ grievance procedures.

◼ Appellant also argues that there is no evidence that Gray, as required, pursued his internal union remedies or was thwarted in doing so by the union. It is the general rule of Kentucky, as well as federal labor policy, that an individual member of a labor union asserting a contractual grievance against the union must in good faith attempt to exhaust the internal grievance procedure established by the constitution sued upon. Branham v. Benevolent & Protective Order of Elks, Lodge No. 942, 427 S.W.2d 572 (Ky.1968); Braddom v.

**1124**

Three Point Coal Corp., 288 Ky. 734, 741, 157 S.W.2d 349 (1941); Brotherhood of Railroad Trainmen v. Williams, 211 Ky. 638, 644–645, 277 S.W. 500 (1925); See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

█ Pursuant to submitted interrogatories, the jury found that Gray had in good faith pursued his internal grievance remedies. Appellee's evidence presented a clear issue of fact upon the point. Although it does not appear that Gray ever technically presented formal written charges to the local, he personally confronted Elmore and the local president at a monthly union meeting and was told he had no grounds to press charges. Thereafter, upon his return to Texas, through letters to the local and to the International Union, he pressed his grievance, requesting it be brought before the local and the International Joint Executive Board. Though receipt of these letters is acknowledged, no action was taken. Viewed in its most favorable light, we cannot say that the jury could not reasonably infer from the evidence that Gray had in good faith pursued his union remedies.

Judgment affirmed.