UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, Local Union No. 117; Stanley Busch as President of Local Union No. 117; United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Local Union No. 1150 and Glen D. Hammond as President of Local Union No. 1150, Plaintiffs,

v.

ALBANY, SCHENECTADY, TROY AND VICINITY DISTRICT COUNSEL OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO; James Hicks, Sr., Individually and as Former Business Agent of Local No. 117 and as President of Albany, Schenectady, Troy and Vicinity District Council of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO; Edward J. Gardner, Individually and as Secretary and Treasurer of the Albany, Schenectady, Troy and Vicinity District Council of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO; United Brotherhood of Carpenters and Joiners of America, AFL–CIO Local Union No. 78; Edward Coutu as President of Local Union No. 78; United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Local Union No. 146; Jack Brown as President of Local Union No. 146; and the Eastern Contractors Association, Inc., Defendants.

No. 82–CV–775.

United States District Court, N.D. New York.

Oct. 8, 1982.

Rice & Conway, Albany, N.Y., for plaintiffs; John Carter Rice, Gerard L. Conway, Robert Hardwick Bixby, Mary Helen Langford, Albany, N.Y., of counsel.

Dominick Tocci, Albany, N.Y., for defendants District Council, Local 78 and 146, Hicks and Gardner.

Bryant, O'Dell & Basso, Syracuse, N.Y., for defendant Eastern Contractors; Brian M. Cole, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This action involves a dispute concerning the enforceability of a collective bargaining agreement with respect to the hours to be worked per day and the compensation to be received for performing overtime work. Jurisdiction is alleged to exist under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[1] Section 102 of the Labor Management Reporting and Disclo-

---

1. 29 U.S.C. § 185 provides in part:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

. . . . .

(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

sure Act, 29 U.S.C. § 412,[2] and the doctrine of pendent jurisdiction, *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Libutti v. Dibrizzi,* 343 F.2d 460 (2d Cir.1965). Before this Court is plaintiffs' application for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a).

## II

The United Brotherhood of Carpenters and Joiners of America is an international labor union organized in the form of an unincorporated association. It has as its apex the international body, or general office, with its headquarters in Washington, D.C. The general office has the power to establish and charter subordinate bodies. State and provincial councils, district councils and local and auxiliary unions thus are created by, and derive their powers from, the international body. Each subordinate level of the United Brotherhood is governed by its individual by-laws and trade rules, which must conform with the constitution and laws of the international body. The Brotherhood is represented in the Albany Capital District by the Albany, Schenectady, Troy and Vicinity District Council. The membership of the District Council is comprised of representatives of Albany Local Union # 117 and three other local unions.

On or about July 1, 1980, the negotiating committee of the District Council entered into a collective bargaining agreement with the Eastern Contractors Association, a not-for-profit New York corporation formed for the purpose of representing area contractors in labor matters. This agreement provided, *inter alia,* that the members of Local Union # 117 and the members of the other three local unions affected by the contract would work seven hours per day or a period of thirty-five hours per week, and that work performed beyond these hours would be compensated at double the straight-time rate. Plaintiffs allege that this agreement

was presented to Local Union # 117 on July 14, 1980, and further allege that, pursuant to Section 42(m) of the Brotherhood's Constitution, the By-laws of the District Council and the past practices of the District Council, Local Union # 117 approved the agreement by vote of the members of the Local affected by the Agreement.

Prior to the June 30, 1982 expiration date of the July 1, 1980 agreement, the negotiating committee of the District Council commenced negotiations with the Contractors Association for the purpose of establishing a new collective bargaining agreement. The negotiating committee consisted of defendant James Hicks, Sr., President of the District Council and then business agent for Local Union # 117, defendant Edward J. Gardner, Secretary-Treasurer of the District Council, and others. During the negotiations, Local Union # 117 held regular elections and Hicks lost his position as the local's business agent.

Plaintiffs allege that the bargaining agreement, as negotiated by the District Council, never was submitted to union members for ratification and that they learned that an accord had been reached only through a local newspaper story. Under the terms of the new bargaining agreement, members are required to work forty hours per week, or eight hours per day, at a higher per hour wage than the old agreement, with their overtime compensation being reduced from double the straight time rate to one and one-half times the straight time rate.

This action was commenced by plaintiffs on July 23, 1982, in Albany County Supreme Court, seeking a declaratory judgment that the Union's constitution and by-laws required ratification before the proposed collective bargaining agreement could take effect, as well as an injunction restraining enforcement of the terms of that agree-

---

**2.** 29 U.S.C. § 412 provides:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including

injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

ment pending ratification by the union members. On July 26, 1982, Justice Edward S. Conway ordered the defendants to show cause why a preliminary injunction should not be granted.

On that same date, the defendants removed this action to this Court, pursuant to 28 U.S.C. § 1446, claiming that because plaintiffs sought to nullify a collective bargaining agreement, this Court has jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. On August 9, 1982, plaintiffs filed an amended complaint containing claims under section 301 of the LMRA and section 101(a)(1) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1).[3]

Plaintiffs, on September 3, 1982, moved for a preliminary injunction. Defendants opposed that application on the ground that injunctive relief here is proscribed by the Norris-LaGuardia Act and cross-moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).[4] This Court denied defendants' motion to dismiss on that day and held an evidentiary hearing

on plaintiffs' application for a preliminary injunction on September 8, 1982.

### III

In this Court a party seeking a preliminary injunction must make a clear showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78–79 (2d Cir.1981). A preliminary injunction is an "extraordinary and drastic remedy which should not be routinely granted" except upon a clear showing that the movant has carried its heavy burden. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568, 569 (2d Cir.1981); *Beech-Nut, Inc. v. Warner-Lambert Co.,* 480 F.2d 801, 803 (2d Cir.1973). This Court believes that plaintiffs' application for a preliminary injunction should be denied, since, regardless of

---

**3.** 29 U.S.C. § 411(a)(1) provides:

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

**4.** Defendants argued that injunctive relief is prohibited here by Norris-LaGuardia since it would have the effect of enjoining employees "from ceasing or refusing to perform any work or remain in [a] relation of employment," 29 U.S.C. § 104(a), and since the dispute here is a "labor dispute" within the meaning of 29 U.S.C. § 113(c). Defendants' motion to dismiss was predicated on plaintiffs' alleged failure to exhaust intra-union remedies and upon a theory that this Court's jurisdiction has been preempted by the National Labor Relation Board because plaintiffs and defendants have filed unfair labor practice charges with the board.

The Court rejected defendants' Norris-LaGuardia contentions, finding that the dispute here is not a "labor dispute" within the meaning of § 113(c) and that, therefore, § 104 is not

applicable. *Columbia River Packers Assoc. v. Hinton,* 315 U.S. 143, 147, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942); *Local 2750, Lumber and Saw Mill Workers v. Cole,* 663 F.2d 983 (9th Cir. 1981); *Bergman v. NLRB,* 577 F.2d 100 (9th Cir.1978); *Drywall Tapers v. Operative Plasterers',* 537 F.2d 669 (2d Cir.1976). *See Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Assoc.,* —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982). Moreover, the Court denied defendants' motion to dismiss on the grounds that it has concurrent jurisdiction with the NLRB since plaintiffs have stated a claim under § 301 of the LMRA, *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Cahill v. Metallic Lathers Union Local No. 46,* 473 F.Supp. 1326 (S.D.N.Y.1979), and that defendants have failed to sufficiently demonstrate that intra-union remedies here provide plaintiffs with a reasonable and adequate opportunity for full relief and that resort to them, under the circumstances, would not be "futile", *Johnson v. General Motors,* 641 F.2d 1075, 1079 (2d Cir.1981); *Gray v. International Ass'n of Heat and Frost Insulators and Asbestos Workers, Local 51,* 447 F.2d 1118 (6th Cir.1971); *see* 29 U.S.C. § 411(a)(4).

whether irreparable harm has been demonstrated,[5] plaintiffs have failed to meet the burden of demonstrating the last prong of this Circuit's preliminary injunction test.

## IV

■ The crux of the problem here is whether the Carpenters' International Constitution and the by-laws of the District Council provide for ratification of collective bargaining agreements by the Locals.[6] Plaintiffs allege that they do, and that, since the new collective bargaining agreement has not been ratified by vote of the members of Local # 117, the new collective bargaining agreement is a nullity.

■ It must be emphasized that courts generally pay great deference to a union's own construction of its constitution and by-laws and a reasonable construction will ordinarily be upheld. *Gurton v. Arons,* 339 F.2d 371 (2d Cir.1964); *English v. Cunningham,* 282 F.2d 841 (D.C.Cir.1960); *Millinery Workers' Union Local 55/56 of the United Hatters, Cap and Millinery Workers' Int'l Union v. United Hatters, Cap and Millinery Workers' Int'l Union, D.C.,* 495 F.Supp. 60 (E.D.Mo.1980); *Davey v. Fitzsimmons,* 413 F.Supp. 670 (D.D.C.1976). Moreover, this Court has no power under the LMRA or the LMRDA to enforce the provisions of the union constitution and by-laws, but can only intervene when they are applied in such a way as to deprive union members of rights guaranteed by those Acts. *See Navarro v. Gannon,* 385 F.2d 512, 516 n. 6 (2d Cir.1967), *cert. denied,* 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968). Here, the Court finds that the constitution of the International and the by-laws of the District Council may fairly be read to allow the District Council alone to negotiate and approve collective bargaining agreements.[7] Consequently, plaintiffs' contention that these documents demand Local ratification of collective bargaining agreements is without merit.

Plaintiffs argue that § 6A of the constitution defines "vested rights" of union members. These rights include: (1) the right to attend and participate in meetings; (2) the right to vote; (3) the right to nominate and be nominated; and (4) the right to

---

5. The evidence adduced at the evidentiary preliminary injunction hearing demonstrates that the new collective bargaining agreement would result in an overall increase in unemployment for the unionized carpenters. This is so since, in the current unemployment setting, as opposed to a full-employment economy, there is virtually no economic savings to the employer when the employees work on an eight hour schedule instead of a seven hour schedule. The per unit labor cost is the same. To complete a "job" at a requisite time, the employer must hire more laborers during a seven-hour work day. However, the total cost to the employer remains the same since, under the new agreement, the per hour wage is increased for employees laboring during an eight hour schedule. Therefore, under the old agreement, more carpenters will be employed.

Moreover, this Court finds that there is little or no competition between union and non-union carpenters for the same jobs. Therefore, there is no employer "savings" from substitution of non-union for union workers. In addition, while there is evidence in the record to support the Associations' contention that the optimum crew of carpenters is at 4 to 5 laborers, and, therefore, there is only marginal utility in adding more laborers to a specific job, this Court finds that most of Association employers' gross income is derived from long term, large scale, jobs where, to complete the jobs on time, more carpenters must be employed in the old agreement seven hour work day than in the new agreement eight hour work day.

6. A breach of a union constitution is cognizable under § 301 of the LMRA, *Santos v. Dist. Council of New York City,* 547 F.2d 197, 199 n. 1 (2d Cir.1977); *Drywall Tapers, Local 1974 v. Operative Plasterers' Int'l Assoc.,* 537 F.2d 669, 672–73 (2d Cir.1976). However, jurisdiction under § 301 to enforce a union constitution does not extend to merely intra-union disputes; the dispute, as it does here, must relate to a collective bargaining agreement. *Cahill v. Metallic Lathers Union Local No. 46,* 473 F.Supp. 1326 (S.D.N.Y.1979). Here, plaintiffs state a claim under § 301 of the LMRA as well as § 101(a)(1) of the LMRDA.

7. On August 24, 1982, the General President of the International issued a decision dismissing a complaint filed by Local 117 with the International which alleged that the new collective bargaining agreement is a nullity since it had not been ratified by the locals. In that decision, the General President stated that neither the International Constitution nor the District Council by-laws required membership ratification of the new 1982 agreement.

run for office or Business Representative.[8] Plaintiffs further allege that § 42(m) of the constitution provides that members of Locals are allowed to vote for contract ratifications.[9] Moreover, plaintiffs contend that the form and procedure ratification votes must take is defined in § 32 of the District Council by-laws [10] under the general heading of "Referendum". Therefore, plaintiffs conclude, the constitution and by-laws mandate that local unions have the right to vote on collective bargaining agreements.

■ However, defendant District Council and the General President interpret § 32 as referring only to circumstances where a referendum ballot is *required* by the constitution and by-laws (the referendum not being required here), and their interpretation is equally plausible. Moreover, this Court agrees with defendants that § 6A of the constitution applies only to situations where the International is ordering a merger, dissolution, consolidation or an alteration in jurisdiction—and not to contract ratification questions. Section 42(m) does not *mandate* a contract ratification vote, but simply delineates general member voter qualification in case, as the General President's decision affirms, a contract ratification vote *is* held.[11] It appears that all the District Council must do is "report back" to

8. Section 6A of the constitution provides:

The jurisdiction of the United Brotherhood of Carpenters and Joiners of America shall include all branches of the Carpenter and Joiner trade. In it shall be vested the power through the International Body to establish and charter subordinate Local and Auxiliary Unions, District, State and Provincial Councils in all branches of the trade, and its mandates must be observed and obeyed at all times.

9. The United Brotherhood is empowered, upon agreement of the Local Unions and Councils directly affected, or in the discretion of the General President subject to appeal to the General Executive Board, where the General President finds that it is in the best interests of the United Brotherhood and its members, locally or at large, to establish or dissolve any Local Union or Council, to merge or consolidate Local Unions or Councils, to establish or alter the trade or geographical jurisdiction of any Local Union or Council, to form Councils and to permit, prohibit or require the affiliation with or disaffiliation from any Council by any Local Union, including the right to establish state-wide, province-wide and regional Local Unions or Councils having jurisdiction over specified branches or subdivisions of the trade. The vested rights of the members shall be preserved and where action as herein described is taken the General President and General Executive Board shall preserve the membership rights of the members of affected Local Unions, including their right to attend and participate in meetings, to vote, to nominate candidates and to be nominated and run for office or business representative. In connection with the foregoing the General President may, upon finding it appropriate, appoint a committee to hold hearings upon due notice to the directly affected local union or councils. . . .

10. Section 32 of the District Council's by-laws provides:

Definition of Referendum—Whenever a referendum ballot or vote is required by this Constitution and By-Laws, it shall mean that a secret ballot election by the eligible members of the constituent local unions present and voting at a membership meeting of that Local Union of which they are members. Notice of such meeting at which a referendum vote is to be taken shall be sent to each member at his last known home address. Unless otherwise specifically provided for herein, a majority of the votes of the eligible voters present and voting shall decide the question. On referendum votes pertaining to the District Council, the votes shall be cast (not counted) sealed in an envelope by the tellers and immediately forwarded to the District Council office and counted by the negotiating committee.

11. Section 42(m) of the constitution provides:

No member of a Local Union shall be eligible to vote for officers, business representatives, assistant business representatives or delegates or to vote on wages and working conditions unless such member has been at least 12 consecutive months a member of the Local Union and is in good standing in the Local Union at the time of voting, except where the Local Union has not been in existence the time herein required, provided, however, that in the case where a trade movement affecting wages and working conditions is applied uniformly to several Local Unions, a member shall be eligible to vote on wages and working conditions if a member for 12 consecutive months in one or more of the Local Unions in the affected area and is in good standing in the Local Union at the time of voting. Retired members not working at or depending on the trade for a livelihood shall not be entitled to vote on trade move-

the Locals, through the Locals' Business Representatives on the District Council's negotiating committee, before the Council "finalizes" the agreement. District Council By-Law § 38.[12] No ratification vote, therefore, is mandated. Any "vote" taken on a contract by the Locals after their Business Representative reports back from the negotiating committee concerning an interim or proposed collective bargaining agreement is purely advisory. The sole power to negotiate and ratify collective bargaining agreements resides with the District Council. The Council may, or may not, heed the advice of the Locals after the Business Representatives report the preliminary agreement. Indeed, extensive evidence at the preliminary injunction hearing supports this proposition.[13] Accordingly, plaintiffs here have not demonstrated a likelihood of success on the merits.

## V

Plaintiffs may still be afforded a preliminary injunction if they demonstrate "serious questions going to the merits" and show that the harm which they would suffer from the denial of this application is "decidedly" greater than the harm defendants would suffer if the application were granted. Unless the balance of hardships tips decidedly in favor of the movant, the Court need not decide whether there are serious questions presenting a fair ground

for litigation. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp., supra; Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48 (2d Cir.1979). Here, the evidence demonstrates that the employer's association would suffer harm in returning to the old contract since (1) the more efficient union employees would take jobs with non-Eastern Association employers, since they could earn more under the new contract, (2) in "small" jobs where the optimum crew is four or five employees, a return to the old contract would either lengthen the time in which a job could be completed or necessitate the payment of overtime wages, (3) some non-carpenter laborers work an eight hour day and a return to the old contract would result in disruption of the work schedule and the overall work-efficiency on the job site, and (4) on certain bidded public jobs, non-union contractors, who maintain an eight hour work schedule, would achieve a competitive advantage over Eastern Contractors who would have to abide by a seven-hour work day under the old contract. Moreover, those union members who are currently employed would forego the increment in wages and benefits, provided by the new collective bargaining agreement, if there were a return to the terms of the old contract. Therefore, although plaintiffs have suffered irreparable harm, this Court finds that the balance of hardships here does not

---

ments affecting wages or working conditions or on ratifications of contracts. In contract ratification votes only those affected by the contract shall be eligible to vote; in cases of industrial contracts the members affected may vote without regard to their length of membership.

12. District Council By-Law § 38 provides:

The negotiating committee shall consist of the President, Secretary-Treasurer and the Business Representatives of this District Council. They shall be impowered to negotiate all agreements with Employers, whether individual or as an association, bargaining for industry wide uniform wages, working conditions, fringe benefits, etc. This committee shall also have the power to work out agreements with adjoining District Councils and Local Unions for improvement of relationship and benefits to members of this District Council. There shall be no changes or inter-

pretation in agreement, unless by majority vote of the committee. The negotiating committee of the District Council shall report back to the Delegates before finalizing the agreement.

13. Courts may rely on extrinsic evidence to interpret labor agreements. *See, e.g., Randall v. Lodge No. 1076, Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO,* 648 F.2d 462 (7th Cir.1981). Here the evidence shows that the Locals' Business Representatives on the negotiating committee reported to the Locals the terms of preliminary agreements whenever collective bargaining agreements were negotiated by the District Council. Some Locals, such as Local # 117, voted on preliminary agreements. This is not to say, however, that the vote was a binding ratification vote. Indeed, the vote taken was informal and did not comply with § 32 of the by-laws.

*decidedly* tip in their favor. Consequently, plaintiffs' application for a preliminary injunction must be denied.

### VI

Accordingly, plaintiffs have failed to sustain their burden with respect to this application for a preliminary injunction; therefore, the application is denied.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52(a).

It is so Ordered.