HUBBELL, ROTH & CLARK, INC.,
Plaintiff-Appellant Cross-Appellee,

v.

CITY OF GALLIPOLIS, Defendant-Appellee Cross-Appellant.

Nos. 80-3224, 80-3319.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1981.

Decided Oct. 2, 1981.

John D. Holschuh and Thomas L. Long, Alexander, Ebinger, Holschuh, Fisher & McAlister, Columbus, Ohio, for defendant-appellee cross-appellant.

Richard A. Frye, Trial Atty., Knepper, White, Arter & Hadden, Columbus, Ohio, for plaintiff-appellant cross-appellee.

Before WEICK, LIVELY and BOYCE F. MARTIN, Jr., Circuit Judges.

WEICK, Circuit Judge.

This is a diversity action filed by the plaintiff-appellant Hubbell, Roth & Clark, Inc., in the United States District Court for the Southern District of Ohio, seeking $73,-522.64 in damages for breach of contract against the defendant-appellee City of Gallipolis, an Ohio Municipal Corporation, for engineering services allegedly performed and to be performed under a contract with the City. The City denied that it entered into a legal contract under Ohio law and counterclaimed seeking the return of monies allegedly erroneously paid to the appellant and for damages for negligent design of a municipal water treatment plant.

Hubbell, Roth & Clark has appealed to this court from an order of the district court granting summary judgment in favor of the City of Gallipolis and dismissing its complaint. The City has cross-appealed from an order dismissing its counterclaim.

The district court held, as a matter of law, that the several written documents signed by the City Manager and authorized by ordinance enacted by the City Commission evidencing an agreement between Hubbell, Roth & Clark and the City failed to comply with the formal requirements of

Ohio Revised Code § 743.29 and Section 43 of the Charter of the City of Gallipolis and that, therefore, there was no binding agreement between the parties. We disagree and reverse and remand for the reasons hereinafter stated.

I

Hubbell, Roth & Clark, Inc., is a Michigan corporation engaged in the business of providing engineering services. The City of Gallipolis is a Municipal Corporation, organized and existing under and by virtue of the laws of the State of Ohio.

On July 24, 1973, representatives of Hubbell, Roth & Clark, Inc., visited the City and met with Paul Willer, the City Manager, and another City officer to discuss engineering services on modifications and additions to the City wastewater treatment plant. On July 27, 1973, appellant sent a proposal letter to the City Manager offering to perform engineering services on the treatment plant. On September 4, 1973, the City Commission passed Ordinance 73–78 which authorized Hubbell, Roth & Clark to perform a preliminary study and cost estimate on the water treatment plant and authorized Willer to enter into a contract with Hubbell, Roth & Clark. The Ordinance provided as follows:

SECTION 1. That the proposed preliminary study and cost estimate under Phase I of the planning and construction of necessary alterations and additions to the municipal sewage treatment plant, as attached hereto in Schedule A, and made a part hereof, be and the same is hereby approved, and the fee for said services, not to exceed $4,000.00 without City approval, is found to be fair and reasonable fees for the performance of said services.

SECTION 2. That the City Manager be and he is hereby authorized to enter into a contract with the said Hubbell, Roth & Clark, Inc., to perform the services as set forth under Phase I of the attached Schedule A.

SECTION 3. That in consideration of the services to be performed as set forth in Schedule A, Hubbell, Roth & Clark,

Inc., shall be paid in accordance with the fees set forth therein.

SECTION 4. That the services described in Schedule A shall be completed as soon as practicable and in accordance with the proposal set forth in said Schedule A.

SECTION 5. This Ordinance shall take effect and be in full force and effect from and after the earliest period allowed by law.

The following day, Mr. Willer advised the appellant in writing of the passage of the Ordinance as follows:

Dear Mr. Hubbell:

The City Commission at their regular meeting of September 4, 1973, authorized your firm to do Phase I of your proposal for engineering services dated July 27, 1973.

Would appreciate your earliest attention in starting this project. Looking forward to working with you on the said project.

Sincerely yours,
/s/ Paul Willer
Paul Willer
City Manager

On September 27, 1973, the firm sent a proposal letter to the City for engineering services to prepare specifications for the drilling of test wells at the proposed well field. The proposal included a specification of fees. On October 2, 1973, the City Commission passed Ordinance 73–43. The Ordinance provided:

SECTION 1. That the City Manager be and he is hereby authorized to enter into a contract with the said Hubbell, Roth & Clark, Inc., to perform the services as set forth in the attached Schedule A.

SECTION 2. That the services described in Schedule A shall be completed as soon as practicable and in accordance with the proposal set forth in said Schedule A.

SECTION 3. This Ordinance shall take effect and be in full force and effect from and after the earliest period allowed by law.

On October 3, 1973, Mr. Willer advised the appellant of the passage of Ordinance 73–43 and enclosed a copy of the Ordinance which had a copy of the proposal letter attached. The October 3 letter provided as follows:

> . . . Enclosed with this letter is a copy of the Ordinance authorizing your firm to proceed with preparing the specifications for drilling certain test wells on the grounds of the Gallipolis State Institute.
>
> Also, enclosed is a map of the proposed area for the test wells location. Would appreciate your processing the specifications as soon as possible, since I do need them to advertise for bids within the next month.
>
> I, also, am expecting from you, a written engineering proposal for the remaining Phase 2 and 3 of the project of the new water treatment plant. Will be recommending to the City Council that we enter into a contract with your firm for the new water treatment plant.
>
> Am looking forward to working with your firm on both of these projects.
>
> Sincerely yours,
> /s/ Paul Willer
> Paul Willer
> City Manager

The sewage treatment plan work was never accomplished, but the appellant did provide engineering services on the test water wells project. Appellant submitted a bill for this work in 1974 in the amount of $2,683.19 and the City paid it.

It appears that between 1973 and 1976, the City of Gallipolis operated in the manner described above on at least 10 occasions, and that in at least 5 of those instances, various types of work were solicited, approved, performed and paid for by the City without any question being raised concerning the existence of a single written document captioned "Contract" or concerning noncompliance with any other formality. It is undisputed that all ordinances involving Hubbell, Roth & Clark were validly enacted and complied with all applicable formalities.

## II

The City maintained its usual practice in its further dealings with Hubbell, Roth & Clark which constitute the primary basis of the instant appeal. On October 10, 1973, the appellant submitted a two-page letter of proposal covering engineering services on the design and construction of a new water treatment plant. On November 6, 1973, the City Commission passed Ordinance 73–48.

The Ordinance was entitled "AN ORDINANCE EMPLOYING HUBBELL, ROTH & CLARK, INC., AS THE ENGINEERING FIRM . . . ." The Ordinance provided as follows:

> SECTION 1. That the proposal submitted by Hubbell, Roth & Clark, Inc., as attached hereto in Schedule A, and made a part hereof, be and the same is hereby approved, and the fee for said services is found to be fair and reasonable for the performance of said services.
>
> SECTION 2. That the City Manager be and he is hereby authorized to enter into a contract with the said Hubbell, Roth & Clark, Inc., to perform the services as set forth in the attached proposal.
>
> SECTION 3. This Ordinance is adopted by the affirmative vote of all the members of the Gallipolis City Commission, in accordance with Section 44 of the Charter of the City of Gallipolis, Ohio.
>
> SECTION 4. This Ordinance shall take effect and be in full force from and after the earliest period allowed by law.

As had been the procedure in the past, on November 8, 1973, the City Manager sent a letter to the appellant advising it of the passage of the Ordinance and enclosing a copy therewith. The letter stated as follows:

> Enclosed is a copy of the Ordinance authorizing your firm to proceed as engineering consultants for the new water treatment plant.
>
> Looking forward to working with you on the project.
>
> Sincerely yours,
> /s/ Paul Willer
> Paul Willer
> City Manager

In conjunction with the hiring of Hubbell, Roth & Clark to perform the engineering services, the City made application to the United States Department of Commerce, Economic Development Administration (E. D. A.) for federal funding. To this end, the Commission passed Resolution R73–37 which authorized Mr. Willer to file the application and to provide any information that the E. D. A. might request.

On the application, the appellant was listed as "Architect/Engineer," and when the form requested a copy of the agreement between the City and the architect/engineer, Willer attached copies of appellant's two proposal letters. The application was certified by the City Manager and included an "Attorney's Affirmation" signed by the City Solicitor. Willer was listed as the City's "chief fiscal officer."

In February, 1974, the City received the funding grant from the E. D. A. On March 28, 1974, Willer wrote to the E. D. A. seeking an adjustment in the amount of the grant because of an additional amount which would be paid to appellant "per our Engineering Contract." The E. D. A. responded on April 2, 1974, and granted the additional amount. The letter also expressed as follows:

> Our records indicate we have only a copy of The Proposal for Engineering Services as submitted to you on October 10, 1973 by Hubbell, Roth & Clark, Inc. Please send us a copy of the Engineering Agreement as accepted and signed by both parties.

This was the first time that the issue of an official contract had been raised.

James Hubbell, of Hubbell, Roth & Clark, attended a City Commission Meeting on May 1, 1974, and reported on the work they were performing. No mention was made of the absence of a formal written contract.

On May 2, 1974, Mr. Willer wrote appellant authorizing it to hire a firm to do aerial photography and another to develop water supply wells. The letter stated that:

> Both of these authorizations would be for our water system improvements and would be paid to you as outside service

and reimbursable expense per our contract with you.

The City later reimbursed appellant for these items in the amount of $1,381.32. Appellant was also given authorization to have topographical map work done and was reimbursed for those expenses as well in the amount of $2,284.12.

In February of 1975, the E. D. A. again wrote the City seeking the agreement signed by both parties. In April, 1975, appellant drafted a formal contract document and sent it to the City on July 1, 1975. The contract was back-dated to November 6, 1973, and appellant's cover letter indicated that the document was submitted as requested by the E. D. A. and was meant to supplement prior contractual documents previously accepted by the City.

On July 1, 1975, however, Paul Willer was replaced as City Manager by Richard T. Mills. Mills made no immediate response to the proposed formal contract. In communication between Appellant and the City, including one formal meeting on August 11, 1975, the absence of a formal written contract signed by both parties was not raised until October 3, 1975. In the interim, Mills gave written authorization to appellant to have certain soil borings performed. Mills wrote as follows:

> This is to inform you that you may proceed with the soil borings for Water System Improvements with Lake Drilling Company, Inc., of Cleveland, Ohio.
>
> You are also advised that the site survey may proceed.
>
> If you have any questions please contact my office.
>
> > Sincerely yours,
> > /s/ Richard T. Mills
> > Richard T. Mills
> > City Manager

On October 3, 1975, Mills wrote to appellant for a status report on the operation and for an "assessment of the contractual basis for such work." On October 6, Mr. Hubbell traveled to Gallipolis and submitted a written report and reported personally to various City officials. At this

meeting the submitted formal contract was discussed but no resolution reached.

The minutes of the October 28, 1975, City Commission Meeting reflect the following:

Mr. Wetherholt suggested that the city manager contact Peck, Shaeffer & Williams (bonding attorney firm for the City) and see what their advice is, as to whether we can afford to debt such as this approximate two million dollars on the present water rates, and if not, how much of a water rate increase we would need to handle this added indebtedness. After the bonding attorney's advice, the city manager should then perhaps, contact Hubbell, Roth & Clark and explain that the city is in no position financially to continue with the project at this time after which Franklin Consultants should be notified of the project and an estimate from this firm given—perhaps the city can get the same job done for less monies. The city manager indicated that he would be doing same.

Relations between the parties appear to have stagnated during the next three months, but on January 23, 1976, the City reimbursed appellant in the amount of $3,901.55 for the site survey and test borings which Mills had authorized on September 15, 1975, which brought the total reimbursement to $15,907.56. By letter of the same date, Mills informed appellant that it no longer represented the City on the Water System Improvements project.

Thereafter, on March 3, 1976, the City Commission passed Ordinance 76–4 authorizing the City Manager to enter into a contract with the engineering firm of Franklin Consultants, Inc. On May 6, 1976, the City of Gallipolis and Franklin Consultants, Inc., executed a formal contract.

### III

The district court held that "the several documents that evidence a consensual agreement between Hubbell, Roth & Clark and the City of Gallipolis do not comply with the formal requirements of the City Charter and state statute for a written contract, publicly filed."

Ohio Revised Code Section 743.29 provides, in pertinent part:

§ 743.29 Surveys for construction and repair of public works of municipal corporations. (GC § 3982–2)

The legislative authorities of municipal corporations may make surveys of water works, sewerage systems, or other public works or improvements which they are by law authorized to construct, operate, maintain, or repair, the construction, improvement, enlargement, or repair of which is contemplated, whether governmental or proprietary, and they may proceed in the manner provided in this section.

.    .    .    .    .

The surveys authorized by this section may include drawings, plans, specifications, estimates of cost . . . and other information and recommendations as the legislative authority deems advisable or necessary . . . .

Agreements entered into for such surveys shall be deemed contracts for professional services and may provide for preliminary surveys or the making of detailed plans, or both, and may also provide for engineer-supervision of the work. No such contract shall be valid unless one or more of the services to be performed thereunder are begun within one year after the contract date.

Such contracts shall be executed in triplicate and shall be signed by the proper officers of the municipal corporation, as in the case of other contracts of such municipal corporation, and by the engineer agreeing to perform such service, and one copy thereof shall be filed with the fiscal officer of the municipal corporation . . . .

Section 43 of the Charter of the City of Gallipolis provides, in pertinent part:

The City Manager may make any contract or purchase or material, or provide labor for any work in any department, not involving more than Five Hundred Dollars. When any expenditure within any department other than the compensa-

tion of persons employed therein exceeds Five Hundred Dollars, such expenditures shall first be authorized and directed by ordinance or resolution of the City Commission, and when so authorized and directed, the City Manager shall make a *written contract* with the lowest and best bidder after advertisement for not less than two or more than four consecutive weeks in a newspaper of general circulation in the City of Gallipolis, Ohio. (emphasis added)

The City argues that the absence of a formal, written contract, signed by both sides, is fatal to any recovery by the appellant under both the state statute and the City Charter.

The appellant argues that a "written contract" existed for the purposes of the Gallipolis City Charter; that it was performed in part by appellant; and that the Ohio statute is inapplicable to the facts of this case. Alternatively, the appellant argues that even if the formal requirements of either the statute or the charter were not met, the City is and should be estopped from asserting this as a defense under the facts and circumstances of this case.

■ We turn first to the Ohio statute, Ohio Revised Code § 743.29. As set out above, the first sentence of the statute reads as follows:

The legislative authorities of municipal corporations may make surveys of water works, sewerage systems, or other public works or improvements which they are by law authorized to construct, operate, maintain, or repair, the construction, improvement, enlargement, or repair of which is contemplated, whether governmental or proprietary, *and they may proceed in the manner provided in this section.* (emphasis added)

After making compliance with the procedures in the section permissive by the use of the phrase, "and they may proceed in the manner provided in this section," the statute goes on to enumerate specific procedures. Some of the procedures are permissive, while others are mandatory. The permissive nature of the entire section, how-

ever, is governed by the first paragraph which makes the adoption of the procedures which follow permissive. The procedures designated as mandatory become so only after the municipality has chosen to adopt the section as its procedural format when it commissions surveys for construction and repair of public works.

That the procedures listed in § 743.29 are permissive is fortified by the language of Ohio Revised Code § 701.05 which provides as follows:

§ 701.05 Authority of municipal corporations.

Municipal corporations operating under a charter which provides for or authorizes a method of procedure in the passage and publication of legislation, the making of improvements, and the levying of assessments *differing* from the method prescribed by general law, may pass and publish such legislation, make such improvements, and levy such assessments under the general law or in accordance with the procedure provided for or authorized by its charter.

.        .        .        .        .

(emphasis supplied)

We note that the statutory variance authorized by § 701.05 is significantly different from Ohio's "home rule" exception which has been developed in the caselaw. *See, e. g., State ex rel. Cronin v. Wald,* 26 Ohio St.2d 22, 268 N.E.2d 581 (1971); *State ex rel. Canada v. Phillips,* 168 Ohio St. 191, 151 N.E.2d 722 (1958). The "home rule" applies when a municipal charter *conflicts* with a state statute, and holds that the charter provision will prevail. Section 701.-05 embodies a different standard indicating that if the Charter and the statute provide for *"differing"* procedures, then the municipal corporation may follow *either* the general law *or* the procedure authorized by the Charter.

On the basis of these two sections we find that the formal requirements of Ohio Revised Code § 743.29 are not applicable to the case at bar and that the alleged "contract" must only pass the muster of Section 43 of the Charter of the City of Gallipolis.

We now face the narrow issue of whether there is a "written contract" between the City of Gallipolis and the engineering firm of Hubbell, Roth & Clark within the meaning of Section 43 of the City's Charter.

It is noted at the outset that there has been no judicial interpretation of the phrase "written contract" as it is found in the City Charter. It is clear, however, that the documents evidencing an agreement herein, would be sufficient to take this case out of the operation of the statute of frauds under Ohio law. *Himrod Furnace Co. v. Cleveland & Mahoning R. R. Co.*, 22 Ohio St. 451 (1872); *Thayer v. Luce and Fuller*, 22 Ohio St. 62 (1871). We are also convinced that the documents herein would be deemed "written contracts" for the purposes of the statute of limitations. *Gray v. International Ass'n of Heat, F. I. & A. W. L. No. 51*, 447 F.2d 1118 (6th Cir. 1971); *McCormick v. Taft*, 61 Ohio App. 200, 22 N.E.2d 510 (1938). If the parties herein were both private entities, there would appear to be no question but that there exists a valid binding contract between them. Moreover, it has been partly performed by appellant and appellant has been paid for such part performance by appellee, who is not in a very good position to renounce its own acts.

The district court was dissuaded by the fact that there was no single, integrated, four-corners document entitled "contract" signed and executed by the parties. We find no such requirement in Section 43 of the Charter. The Charter does not speak as to the form of the contract. It has no requirement of signature, seal, structure or any other technical requirement. The City treated Hubbell, Roth & Clark for all in-

tents and purposes as the contract engineers on the water treatment project, and referred to them in that manner in correspondence with E. D. A. All material terms and specifications were in writing as were the various Ordinances and authorizations to proceed sent by the successive City managers to the appellant. Much of the work was performed and part of the money was paid after the City was made aware of the fact that there was no "four-corners" contract on file with the federal agency. The City also obtained federal funds from E. D. A. on its representations that it had contracted with the appellant for the project. After making these representations to an agency of the federal government and thereby obtaining money for the project, the City is not in a very good position to renege. We find that the several documents detailed above suffice to meet the Charter's general requirement of a "written contract" and therefore the district court erred in ruling that this particular formal requirement was not met.[1]

Due to our resolution of this case on the above grounds, we find it unnecessary to rule on appellant's claim that the City should be estopped from denying· that the documents which do exist constitute a written contract.

The estoppel theory is clearly raised by the facts of this case and was expressly presented to the district court in appellant's memorandum in opposition to the City's motion for summary judgment. The district court, however, did not address the argument in its opinion dismissing the action. As above indicated, we are of the opinion that the district court erred in hold-

---

1. The cases cited by the City in arguing for a strict construction of statutory formalities are distinguishable from the case at bar. *See, e.g., Lathrop Co. v. City of Toledo*, 5 Ohio St.2d 165, 214 N.E.2d 408 (1966), and cases reviewed with approval therein. In that line of cases, the Ohio Supreme Court faced the non-compliance by a private contractor with various statutorily *required* formalities. As demonstrated above, however, in the instant case there is no applicable state statute requiring that a formal, "four-corners" contract be executed and signed by both parties to a municipal agreement.

As a factual matter, the cases relied on by the City for the most part deal with situations where a city officer has acted either unilaterally and in general disregard of procedural safeguards or outside the scope of his authorization giving rise to a strong policy argument in favor of voiding the contract so as to protect the public from such unilateral action. The facts of this case, of course, are quite different. The restrictive statutes, where they apply, are meant to prevent fraud rather than cause it. *City of Cincinnati v. Cameron*, 36 Ohio St. 336, 364 (1878).

ing that the appellant is barred as a matter of law from recovery because of the absence of a "four-corners" contract. Because of the narrowness of our holding and the fact that the issue was not passed upon by the district court, we decline to reach the appellant's argument based on estoppel. This argument may, and should, however, be considered by the district court on remand along with the other issues which remain.

## IV

In the district court, the City counterclaimed against the appellant seeking the return of $15,907.57 that the city had paid appellant under the allegedly invalid contract and for $1,500,000.00 in damages for negligence in the performance of the work which was accomplished. The district court held that since there was no valid contract, the payments the City made were made as a volunteer and thus could not be recovered. Conversely, if there is a valid contract, there can be no claim for a return of monies paid. To the extent that the district court based its dismissal of the negligence-breach of contract counterclaim on the finding that there was no binding contract because there was no "four-corners" document, the district court is reversed and both the claim and the counterclaim shall be tried together.

As we have indicated, the sums already paid by the City to the appellants may not be recovered by the City. The City, however, is entitled to proceed on its claim against the appellant for negligent performance of the contract and the appellants are entitled to proceed against the City for damages for breach of contract.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.