OPINION
Defendants-appellants, John K. Littrell, Phyllis Littrell, Hubert D. Littrell and Sarah Littrell, appeal the decision of the Preble County Court of Common Pleas granting plaintiffs-appellees, Norman E. Smith and Sharon Smith, specific performance of a contract for an easement. We affirm the decision of the trial court.
Sharon Smith owned a sixty-five acre tract of farmland in Washington Township, Preble County. The tract is almost square in shape and is bisected by the Seven Mile Creek which traverses the property in a generally northwest to southeast direction. The only access to the property is from the east side of the tract via a gravel road running west from Eaton Gettysburg Road. The gravel road crosses Seven Mile Creek over a bridge, continues west for some distance, then turns south into the southern portion of the tract.
Appellees divided the tract into two parcels containing 8.28 and 56.72 acres, respectively. The new property line dividing the tracts runs on an east-west axis with the smaller tract to the north and the larger one to the south. The gravel access road and bridge over the creek lie totally within the larger parcel just south of the dividing line between the two new tracts. Appellees discussed the sale of the larger parcel to appellants, and on March 4, 1996, the parties executed a real estate purchase contract wherein appellees agreed to sell appellants the fifty-six acre tract for a purchase price of $195,000.
Prior to closing on the sale of the property, Norman Smith and John Littrell met on the fifty-six acre parcel. Smith told John he needed access to the northern eight acre parcel via the gravel road and that he wished to retain an easement as a condition of the sale. Smith showed John the location west of the bridge where the gravel road turned south and indicated he wanted an easement running north from that point to the eight acre parcel.
The closing on the sale took place at the offices of Somerville National Bank in Eaton on April 5, 1996. Somerville National Bank financed the purchase for appellants and used the services of attorney Stephen R. Bruns to conduct the title search and prepare the closing documents, including an agreement for the conveyance of an easement.
The easement agreement states: "* * * [appellants] shall convey to [appellees] an easement across the subject premises for ingress and egress, and that conveyance shall be given upon the completion of an adequate legal description satisfactory to the parties and Preble County Auditor." Somerville National Bank's president, Doug Ulrich, filled in a general description of the easement on the agreement in the absence of a formal legal description. The easement is described in Ulrich's handwriting, in a section entitled "general terms," as follows: "North side of property, approximately 300 feet long and minimum width." Ulrich also filled in other blank terms indicating that the consideration for the easement would be $10, and that the parties would equally bear the costs of preparing the easement description plus preparing and recording the instruments of conveyance. Smith paid the $10 consideration in cash to Hubert Littrell. Hubert testified that he received the $10, but that he returned the money to Smith once the closing was completed and the parties exited the bank.
When the easement was finally surveyed several months later, it was determined that ingress and egress would require an easement with a total length of 1,057.69 feet. Local regulations also required a width of forty feet. Appellants subsequently split their fifty-six acre parcel into two smaller parcels. As a result, a second survey was required and the minimum width for the easement grew to fifty feet as mandated by local regulations for lanes servicing more than two residential properties. As such, the easement grew to a 1,070.46 foot-long easement with a mandatory fifty-foot width.
Presented with the surveyor's work, Bruns prepared an instrument of conveyance for the easement. Appellants refused to convey the easement because it was "over extensive" and did not require appellees to contribute to maintenance costs.
Following appellants' refusal to execute the instrument, appellees filed a complaint seeking specific performance of the contract for the easement. The trial court granted judgment to appellees and ordered specific performance on the easement contract. Appellants appeal the decision of the trial court raising five assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED WHEN IT FOUND THAT A CONTRACT BETWEEN THE PARTIES EXISTED BUT USED IT'S [SIC] JUDICIAL AUTHORITY TO REFORM A MISTAKE OF FACT AS TO A MATERIAL PART OF THE CONTRACT SO AS TO CREATE A CONTRACT.
The interpretation of a contract that is clear and unambiguous is a question of law. State ex rel. Parsons v. Fleming (1994),68 Ohio St.3d 509, 511. Questions of law are reviewed by this court denovo. Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 51-52. Contracts are to be interpreted to carry out the intent of the parties as evidenced by the actual language of the contract. Skivolocki v. East Ohio Gas Co. (1974), 38 Ohio St.2d 244, 248. It is well-settled that enforcement of a contract to convey interest in realty rests, in part, on whether the contract adequately describes the land to be conveyed or provides themeans of identifying it. Schmidt v. Weston (1948), 150 Ohio St. 293, syllabus. (Emphasis added.) Written contracts may, and often do, consist of more than one document. See Hubbell, Roth Clark, Inc. v. City ofGallipolis (C.A.6, 1981), 660 F.2d 201, 207. The parties' agreement was not an actual transfer of an easement, but was an agreement to transfer an easement once an accurate legal description was obtained.
The language of this agreement is clear and unambiguous on its face. The agreement states, "[appellants] shall convey to [appellees] an easement across the subject premises for ingress and egress." The agreement states the conveyance will take place when "an adequate legal description satisfactory to the parties and Preble County Auditor" is obtained. The language in the agreement provides the means of identifying the easement: the "adequate legal description." Once the surveyor's legal description of the easement was completed, identification could be made by reference to that legal description. The agreement coupled with the legal description from the surveyor is sufficient to form a binding contract.
However, appellants argue there is no contract because the parties were mistaken as to the description of the easement. Appellants further argue relief from a mistake may not be granted if the mistake is the essence of the contract. The surveyor determined ingress and egress would require an easement of 1,070.46 feet in length and 50 feet in width. The "general description" in the agreement describes the easement as "North side of property, approximately 300 feet long and minimum width." Appellants argue this description is a mistake that is the essence of the contract.
It is well-established under the generally applicable rules governing contract interpretation that specific provisions take precedence over more general provisions. Mutual Life Ins. Co. v. Hill (1904),193 U.S. 551, 558, 24 S.Ct. 538, 540. As such, the "adequate legal description satisfactory to the parties and Preble County Auditor" will take precedence over the general terms "North side of property, approximately 300 feet long and minimum width."
Furthermore, a reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. See State v. DeHass (1967),10 Ohio St.2d 230, syllabus. As such, an appellate court must not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court. Seasons Coal Co., Inc.v. Cleveland (1984), 10 Ohio St.3d 77, 80.
The trial court determined and the evidence established that Smith showed John Littrell where he desired to enter the eight acre parcel. The trial court additionally determined that John agreed to allow appellees access over the existing gravel drive and so much of appellants' other property as was required to give appellees access to their property. At trial, John stated he told appellees, "Mr. Smith, you can come and go anytime you want to back in here. You're welcome." When John was asked if he "understood that [appellees] wanted use of the bridge," he stated "yes."
The testimony of attorney Richard Hanes and attorney Bruns further confirmed that the appellants understood, prior to closing, where appellees intended to gain access to their property, how they intended to use the gravel drive, the bridge, and then exit the gravel drive to travel toward their property where the gravel drive turns south. The evidence in the record supports the trial court's conclusion that appellees were entitled to an order requiring appellants to convey the easement.
Evidence reveals that appellants' complaint with the easement is not with regard to mistaken location or the length of the easement, but actually is related to the issue of maintenance of the easement. Thus, there was no mistake of fact that constituted the essence of the contract and materially effected the agreed exchange of performances. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT GRANTED THE PLAINTIFFS RELIEF FROM A MISTAKE OF FACT WHICH WAS THE RESULT OF APPELLEES' OWN NEGLIGENCE.
Appellants argue that a party is not entitled to relief on the ground of mistake of fact if the mistake was the result of his own negligence. Appellants maintain that appellees assumed any hardship which might come to them as a result of a three hundred foot easement not being sufficient in length. Generally, relief for a unilateral mistake of a material fact will be denied where the mistake is the result of a party's own negligence. Carucci v. John Hancock Mutl. Life Ins. Co. (1968),15 Ohio App.2d 1, 3.
John Littrell testified that he agreed to allow Smith access over the gravel drive and bridge. Yet, during the same direct examination John contradicts this testimony. John states that the agreement was for a three hundred foot easement from Eaton Gettysburg Road toward a spot on the river bank before reaching the bridge. John further testified that it was his understanding that appellees intended to either build a new bridge or drive their vehicle through the river. John testifies he granted appellees an easement of "300 feet minimum width wide * * * from the road down to the north side of the bridge where he could put him a cross-over, whether he wanted to drive-through or put a bridge in."
From the evidence presented at trial, it is apparent that appellees intended the easement they retained as a condition of the sale to comprise the existing gravel drive and the bridge across the Seven Mile Creek to a point where the drive turns south, appellees then wished the easement to turn north toward their property. The approximate distance from the point appellees wished to turn off the gravel drive and head north toward the eight acre parcel is 328.51 feet. Since there is no starting or ending point in the "approximately 300 foot" description in the "general terms" section of the agreement, this obviously describes the segment of the easement not within the existing gravel drive.
If Eaton Gettysburg Road is treated as the starting point of the easement, it becomes apparent that the only section of the easement being described is the segment not within the existing drive. This is evident when considering the three hundred foot distance does not even reach the bridge over the Seven Mile Creek. Considering John's testimony and appellees' testimony that the understanding between them was that appellees were to have use of the bridge, the three hundred foot "general terms" description defies common sense in light of the legal description and the testimony regarding the easement.
There was no unilateral mistake because the evidence demonstrates appellants and appellees both understood where the easement was to begin and end when they executed the agreement. The operative description of the easement in the agreement is "an adequate legal description satisfactory to the parties and Preble County Auditor." Thus, there was no mistake of fact which was the result of appellees' own negligence. Therefore, the second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED WHEN IT GRANTED RELIEF TO THE APPELLEES AS TO THEIR MISTAKE OF FACT WHEN NO AVERMENT OF MISTAKE WAS STATED IN THE PLAINTIFFS' PLEADING AS REQUIRED BY OHIO CIVIL RULE OF PROCEDURE 9(B).
Appellants argue that appellees' complaint failed to comply with Civ.R. 9(B), and that appellees failed to state a claim for relief based on mistake. Civ.R. 9(B) requires that, "[i]n averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The underlying determination in each case is whether the allegation is specific enough to inform the defendant of the act of which the plaintiff complains, and to enable the defendant to prepare an effective response and defense.Baker v. Conlon (1990), 66 Ohio App.3d 454, 485.
The complaint put appellants on notice of the act which appellees complained. Appellees demand was for specific performance of the easement agreement. There was no mistake of fact that constituted the essence of the contract and materially effected the agreed exchange of performances. Therefore, there was no need for an averment of mistake in the appellees' pleading because appellees were merely seeking enforcement of the contract based on its terms.
Appellees' allegation was specific enough to inform appellants of the act which appellees complained, and to enable appellants to prepare an effective response and defense. Therefore, the third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED IN THAT IT ORDERED SPECIFIC PERFORMANCE OF A CONTRACT WHEN THE TERMS THEREOF WERE NOT COMPLETE, CERTAIN AND FREE FROM DOUBT OR AMBIGUITY.
Appellants argue that there is no contract which equity can enforce where one party enters into a contract under a mistake as to any of the essential elements thereof, it being the general rule that the specific performance of a contract will not be decreed where the contract is not certain in its terms. Appellants further argue that the terms of a contract are indefinite where the terms are left open for future determination by the parties.
Specific performance rests in the sound legal discretion of the court, in view of all the circumstances of the case. Sternberg v. Board ofTrustees of Kent State University (1974), 37 Ohio St.2d 113, 118. Specific performance will not be decreed where the terms of the contract are indefinite as to any material feature to be performed by either party, or if they are left open for future determination by the parties, or if they are so uncertain or equivocal in their meaning that the intention of the parties in regard thereto cannot be determined. Lyonv. Jackson (1955), 72 Ohio Law Abs. 5, 7. Yet, it is well-established that specific performance of a contract for an interest in real property "may be had as a matter of right, because there is nothing else in the world exactly equivalent to conveyance of the particular piece of real estate contracted for." Link v. Burke (1926), 5 Ohio Law Abs. 676, 676-677.
The trial court determined that the terms of the contract were complete, certain and free from doubt or ambiguity. The easement agreement states, "* * * [appellants] shall convey to [appellees] an easement across the subject premises for ingress and egress, * * * upon the completion of an adequate legal description * * *." There is sufficient evidence in the record to support the trial court's determination that there was a contract for an easement and that the easement was adequately described once the survey was completed. Specific performance cannot be decreed where the contract does not itself furnish a standard by which performance is to be determined. Id. This contract does furnish the performance, "[appellants] shall convey to [appellees] an easement," and the contract itself furnishes a standard by which performance is to be determined, "conveyance shall be given upon the completion of an adequate legal description satisfactory to the parties and Preble County Auditor." Therefore, there is nothing left open for future determination by the parties. The evidence also demonstrated that appellants agreed to allow appellees access over the existing gravel drive and so much of appellants' other property as was required to give appellees access to their property, and knew where the easement was to begin and end.
Consequently, it was within the power of the trial court to order specific performance. Therefore, the fourth assignment of error is overruled.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED WHEN IT FOUND THAT A REFORMABLE CONTRACT EXISTED BETWEEN THE PARTIES.
The contract was enforced according to its terms. The agreement alone was insufficient to describe the location of the easement because there was no reference point to the beginning. However, it is sufficient evidence of appellants' intent to give appellees an easement. The agreement states the conveyance will take place when "an adequate legal description satisfactory to the parties and Preble County Auditor" is obtained. The identification is made by reference to the surveyor's "legal description" of the easement.
A reasonable interpretation of a contract should attempt to harmonize all the provisions rather than produce a conflict in them. See FarmersNatl. Bank v. Delaware Ins. Co. (1911), 83 Ohio St. 309, syllabus. Thus, the trial court merely enforced the terms as they appear in the agreement in a manner which harmonized all the provisions rather than produce a conflict in them. Therefore, the fifth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.